**UNITED STATES of America,**
**Plaintiff,**

v.

**Jerome ZAROWITZ, Sanford Waterman, Elliott Paul Price, Marvin Sillman, Frank Lang Rosenthal, Defendants.**

No. 7227–CR.

United States District Court,
C. D. California.

April 19, 1971.

Robert L. Meyer, U. S. Atty., Alfred N. King, Robert S. Thaller and Richard P. Crane, Jr., Special Attys., U. S. Dept. of Justice, Los Angeles, Cal., for plaintiff.

Wyman, Bautzer, Finell, Rothman & Kuchel, Milton A. Rudin and Alan D. Croll, Beverly Hills, Cal., for defendant Jerome Zarowitz.

Simon, Sheridan, Murphy, Thornton & Medvene, Thomas R. Sheridan, Los Angeles, Cal., for defendant Sanford Waterman.

Paul T. Smith, Boston, Mass., for defendant Elliott Paul Price.

Burton & Marshall, Adrian Marshall, Beverly Hills, Cal., for defendant Marvin Sillman.

Goodman & Snyder, Ltd., Oscar Goodman, Los Angeles, Cal., for defendant Frank Lang Rosenthal.

FINDINGS, CONCLUSIONS AND ORDER GRANTING DEFENDANTS' MOTIONS FOR DISQUALIFICATION AND REASSIGNMENT OF CASE

HAUK, District Judge.

This matter has come on for hearing Monday, April 19, 1971, at 2:00 P.M., before the Honorable A. ANDREW HAUK, United States District Judge, to whom the case, cause and proceedings herein [1] was heretofore assigned by lot under the rules, regulations and orders

---

1. This is a criminal prosecution by way of an indictment in 47 Counts charging Defendants with interstate transmission of wagering information (18 U.S.C. § 1084); use of interstate facilities in aid of racketeering (18 U.S.C. § 1952); and conspiracy to engage in such activities (18 U.S.C. § 371).

of this United States District Court for the Central District of California and particularly General Order No. 104 thereof, upon the Motions of the Defendants that the said Judge disqualify himself from any further action or participation herein.

After full consideration of said motions, the affidavits of Defendants and the certificates of good faith of their counsel of record, together with the points and authorities submitted in support thereof, the points and authorities filed by the Government in opposition thereto, and the oral arguments made in Court today, and good cause appearing, the aforesaid Judge now makes and enters his findings, conclusions and order as follows:

### FINDINGS AND CONCLUSIONS

1. Each and all of the affidavits filed by the respective Defendants is and are timely within the meaning and intent of 28 U.S.C. § 144.[2]

■ 2. Said affidavits set forth certain factual allegations, the truth or falsity of which the Judge may not pass upon or control, and which the Defendants assert support the charge that this Judge has a personal bias or prejudice against them. However, although these factual allegations must be accepted, the Court is obliged to determine their legal sufficiency. Berger v. United States, 255 U.S. 22, 33, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Botts v. United States, 413 F.2d 41 (9th Cir. 1963); United States v. Tropiano, 418 F.2d 1069 (2d Cir. 1969); Lyons v. United States, 325 F.2d

370 (9th Cir. 1963), cert. den., 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964).

3. The Judge does not now have, nor did he ever have, any such alleged personal bias or prejudice in the slightest degree for or against any of the parties to this case, cause and proceeding herein, and more particularly does not now have and never did have any such alleged personal bias or prejudice in the slightest degree against any of the Defendants herein, singly or collectively.

4. However, the allegations of the affidavits which the Court and Judge must accept as true, are, in the absence of any contradictory evidence which as we have noted is absolutely impermissible under 28 U.S.C. § 144, *legally* sufficient to show that there is perhaps the *appearance* of a *possibility* of personal bias or prejudice of the Judge against at least two of the Defendants, Messrs. Jerome Zarowitz and Elliott Paul Price, by reason of two decisions heretofore rendered by the Judge, compelling testimony of recalcitrant but immunized witnesses in the Grand Jury investigation of a certain alleged meeting in Palm Springs of these two Defendants with other persons who in prior decisions of other Federal Courts of the nation had been characterized as New York members of the notorious underground or underworld group known variously as the *Mafia* or the *Cosa Nostra*. In re Loughran, 276 F.Supp. 393, 396 n. 8 (C.D.Cal. 1967); In re Lazarus, 276 F.Supp. 434, 436 n. 9 (C.D.Cal.1967).

5. Moreover the affidavits also set forth other allegations which are indeed

---

2. "28 U.S.C. § 144. Bias or prejudice of judge

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. As amended May 24, 1949, c. 139, § 65, 63 Stat. 99."

**92**

actually true as this Judge is well aware, relating to five orders entered by this Judge last September, October and November authorizing fifteen-day wiretaps of several telephones, along with extensions of three of them for additional fifteen-day periods, during the course of which reports were duly rendered to the Court every five days, all as provided by and in accordance with the relatively new Federal wiretapping statutes, 18 U.S.C. §§ 2510–2520 (1968, as amended 1970). And, as alleged in Defendants' affidavits, this Judge necessarily received and filed, secretly and ex parte as provided by law, evidentiary facts by way of affidavits supporting the authorizing wiretapping orders and extensions as well as by way of the five-day reports, which are most certainly relevant and will be introduced in evidence at future hearings upon motions to suppress evidence and during the trial of this case, cause and proceeding. These allegations factually tend to show the appearance, though not the actuality, of possible personal bias or prejudice on the part of this Judge by reason of what might be termed participation in pre-indictment investigations as well as pre-knowledge or pre-viewing by this Judge of evidence helpful to the prosecution but prejudicial to the defense.

■ 6. Thus we conclude that these two sets of allegations do not in and of themselves, whether taken together or separately, show any actual personal bias or prejudice of this Judge that would clearly and peremptorily disqualify him under 28 U.S.C. § 144; nor do they sup-

port the other contentions of the Defendants that the Judge will be a "material witness", has been "of counsel" to the Government, or has a "substantial interest" in the case requiring him to disqualify himself under 28 U.S.C. § 455[3]; nor do they convince the Court that this Judge would be called upon to "determine an appeal" of his own prior decisions in violation of 28 U.S.C. § 47.[4] Nevertheless, as we also conclude, the two sets of allegations, taken together do appear to be sufficient, legally and factually and standing as they must without evidentiary contradiction, to show the *appearance* of *possible* personal bias or prejudice—a showing which necessarily gives us pause and dictates that we disqualify and recuse ourself *sua sponte.*

7. Finally, a circumspect and punctilious devotion to the ideal of justice in the abstract as it appears to the public at large, as well as the ideal of fairness as it is applied concretely in the case before us, affirms our determination to disqualify and recuse ourself. Like Caesar who parted from his wife Pompeia because she was not above suspicion,[5] so here to avoid even the appearance of the possibility of personal bias or prejudice, wise discretion and sound judgment compel us to leave this case, however reluctant we are to thrust its burden upon another Judge of our Court or to cause any delay or inconvenience to the parties.

As Mr. Justice Frankfurter so eloquently put it, Public Utilities Comm'n v. Pollak, 343 U.S. 451, 466–467, 72 S.Ct.

---

3. "28 U.S.C. § 455. Interest of justice or judge

"Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein."

4. "28 U.S.C. § 47. Disqualification of trial judge to hear appeal

"No judge shall hear or determine an appeal from the decision of a case or issue tried by him."

It is to be noted that this is found in the Judicial Code in Chapter 3 which is solely concerned with organization of the Courts of Appeals and has absolutely nothing to do with the District Courts.

5. Plutarch, "Lives: Caesar" and "Roman Apothegms", Bartlett's Familiar Quotations, 1114 (12th ed. 1952); 14 Great Books of the Western World, 577 at 581 (1952).

813, 822–823, 96 L.Ed. 1068 (1952), in voluntarily withdrawing from participation in a case where no objection by any of the parties had been raised or even hinted:

> "The judicial process demands that a judge move within the framework of relevant legal rules and the covenanted modes of thought for ascertaining them. He must think dispassionately and submerge private feeling on every aspect of a case. There is a good deal of shallow talk that the judicial robe does not change the man within it. It does. The fact is that on the whole judges do lay aside private views in discharging their judicial functions. This is achieved through training, professional habits, self-discipline and that fortunate alchemy by which men are loyal to the obligation with which they are entrusted. But it is also true that reason cannot control the subconscious influence of feelings of which it is unaware. When there is ground for believing that such unconscious feelings may operate in the ultimate judgment, or may not unfairly lead others to believe they are operating, judges recuse themselves. They do not sit in judgment. They do this for a variety of reasons. The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact."

And more recently as phrased so aptly by Mr. Justice Black, In Re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) in reversing as a denial of due process the action of a State judge in presiding at the trial of a contempt citation which he had initiated as a "one-man grand jury":

> "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' *Tumey v. Ohio,* 273 U.S. 510, 532, [47 S.Ct. 437, 441, 71 L.Ed. 749]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' Offutt v. United States, 348 U.S. 11, 14, [75 S.Ct. 11, 13, 99 L.Ed. 11.]."

8. The guidelines are obviously difficult to formulate explicitly, and general principles that would apply to every instance of voluntary disqualification perhaps cannot adequately be verbalized. Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).[6]

---

6. See United States v. Quattrone, 149 F. Supp. 240, 242 (D.D.C.1957) where Judge Youngdahl struggles with the problem and comes up with the same answer:

> "[3] As a general rule, voluntary disqualification is an appropriate remedy in cases in which it may reasonably appear that the determination of the issues by the judge concerned might be improper, even though the facts do not support such a supposition.

\*    \*    \*    \*    \*

> "The Court does not believe that any general principles can be laid down concerning the degree to which an appearance of bias, interest, or improper motive must exist before voluntary disqualification becomes desirable in any particular case. The availability of other judges, the inconvenience or prejudice to the public or parties which may result from the delay, the importance of the issues involved in the case,

It may also be that by our action here today we will be setting a precedent under the wiretapping statutes which will require that any Judge who issues orders authorizing these wiretaps and who necessarily receives the five-day reports of evidence obtained in the course thereof should disqualify himself from sitting upon any trial of the persons who participated in the telephone conversations so wiretapped and reported, as well as upon any pretrial motions to suppress such evidence.

9. Still, a good conscience founded upon the Golden Rule of doing unto others as you would have them do unto you triggers the ineluctable and inevitable determination which we here and now must enunciate in withdrawing from the case. We are strengthened by the knowledge that under our Court's General Order No. 104 the Judge to whom the case is reassigned has the privilege of sending to us a case of equal magnitude and complexity from his own case load, and we are fortified by the fact that the parties with the consent of the new Judge may retain the present schedule of pretrial hearing and jury trial dates already set for June 7 and June 22, 1971, respectively.

## ORDER

For the foregoing reasons and pursuant to the findings and conclusions hereinabove set forth,

It is hereby ordered:

1. I, Judge Hauk, do voluntarily disqualify and recuse myself from any further action and participation in the case, cause and proceeding herein, "U. S. A. v. Zarowitz Waterman, Price, Sillman and Rosenthal", No. 7227–Cr.–AAH, C.D.Cal.

2. The said case, cause and proceeding is transferred and returned forthwith to the Clerk of the Court for reassignment pursuant to the applicable

---

the nature of the actions which give rise to the appearance of partiality, and many other factors all may be relevant. Furthermore, it would be presumptuous for this court to attempt to lay down any general test. For the decision as to voluntary disqualification, perhaps more than any other decision, is one to be made in accordance with the dictates of the conscience of the individual judge—and this Court's personal convictions can be of little assistance to others.

"Concededly, in this case the appearance of judicial impropriety which would result from this Court's retention of jurisdiction would not be great. On the other hand, other judges are readily available, and the delay and inconvenience resulting from this Court's voluntary disqualification would be negligible. In balancing these factors the Court has taken into consideration the fact that confidence in the Judiciary is essential to the successful functioning of our democratic form of government. That form of government could not long survive if citizens could not have faith in the impartiality of judges. Though the making of this decision has been a most unpleasant task, the Court believes that a proper application of the standards governing the administration of criminal justice leaves no alternative. For those standards require the most scrupulous concern for appearances as well as for facts. In this regard the Court believes the following statement to be particularly pertinent: 'Criminal justice is concerned with the pathology of the body politic. In administering the criminal law, judges wield the most awesome surgical instruments of society. A criminal trial, it has well been said, should have the atmosphere of the operating room. The presiding judge determines the atmosphere. He is not an umpire who enforces the rules of the game, or merely a moderator between contestants. If he is adequate to his functions, the moral authority which he radiates will inspire the indispensable standards of dignity and austerity upon those who participate in a criminal trial.'

"In view of the appearance of impropriety, in view of the minimal inconvenience which would result from the assignment of another judge to this case and in view of the rigid standards which must govern the administration of criminal justice, the Court is of the firm belief that it must voluntarily disqualify itself from any further proceedings in this case. Accordingly, the motion will be reassigned for argument before another judge."

rules, regulations and orders governing this Court and Judge, particularly General Order No. 104, Part Two, paragraph 1, subparagraph I.