**In re GRAND JURY PROCEEDINGS, GRAND JURY NO. 87–4, EMPANELED SEPTEMBER 9, 1987 (Two Cases).**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**(UNDER SEAL), Defendant–Appellant (Two Cases).**

**Nos. 88–5610, 88–5611.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 17, 1988.

Decided Sept. 14, 1988.

John Kenneth Zwerling, Alexandria, Va., (Michael Hardy, Arthur R. Black, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, on brief), for defendant-appellant.

Henry E. Hudson, U.S. Atty. (William Otis, Asst. U.S. Atty., Lawrence J. Leiser, Asst. U.S. Atty., Leslie A. Hulse, Sp. Asst. U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before RUSSELL, WIDENER and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Vernon Bellecourt, Bill Means and Bob Brown were called to testify before a federal grand jury which was investigating possible illegal activities of a number of people, including the officers of the Peoples' Committee for Libyan Students. When the men refused to testify before the grand jury despite grants of use immunity, the district court found them in contempt. They appeal that finding. We affirm.

### I.

The complicated procedural history of this case began on July 20, 1988, when subpoenae were served on Vernon Bellecourt and Bill Means to appear before a grand jury in Alexandria, Virginia on July 25. Bob Brown was later subpoenaed to appear the same day. The men subsequently were told to appear on July 27, 1988.

On the 27th, the three witnesses appeared but refused to testify without speaking to counsel.[1] The witnesses asked Judge Cacheris for two weeks to consult with their attorneys. The government told the court it would offer immunity to the witnesses, and each witness was given a copy of the immunity order and its supporting papers. The court ordered the witnesses to obtain local counsel and appear the next day, July 28, at 10:00 a.m.

■ The next day, at the appointed hour, the witnesses again withheld their testimony. Again before Judge Cacheris, counsel for Means and Bellecourt explained that their clients refused to testify because the immunity order was fatally flawed.[2] (Brown was still without representation.) The government informed the court that electronic surveillance conducted pursuant to the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1806 *et seq.*, had preserved some conversations of the witnesses. The court reissued the immunity order of each defendant, in their presence,

---

1. Each of their attorneys was out of the state dealing with other matters.

2. The witnesses pointed out two problems with the immunity order. First, they argued that an error in the government's motion in support of the Order of Immunity contaminated and invalidated the order. The error to which the witnesses objected was a statement in the motion to the effect that the three men had "refused to testify." The order, however was signed and filed with the district court on July 22, 1988, along with a letter of authorization from the Department of Justice dated May 2, 1988. The government explained to Judge Cacheris (and to this court) that the wrong immunity form was inexplicably used and the language should have read that the witness is "likely to refuse to testify." We believe Judge Cacheris cured any such defect by simply resigning the order in the presence of the parties.

The second defect presented by the witnesses questions the authority of an acting assistant attorney general to approve an immunity order. The witnesses argue that an acting official is not delegated such authority. While we have not spoken to this issue, we find persuasive the analysis in *United States v. Yanagita,* 552 F.2d 940, 947 (2d Cir.1977) which held that an acting assistant attorney general did have the authority to issue grants of immunity pursuant to 18 U.S.C. § 6003(b). We agree with that analysis and reject the witnesses' attack here.

by amending the date on the original order. The court then ordered the witnesses to testify at 1:00 p.m. that afternoon.

At 1:00 p.m. the witnesses refused to talk to the grand jury without a more extensive review into the legality of the FISA wiretaps. (Judge Bryan had ruled on the 27th that the FISA wiretaps were legal, but these witnesses asked for a more in-depth investigation.) At 2:30 p.m. Judge Cacheris ruled that the witnesses could appear before Judge Bryan for a determination as to whether he (Judge Bryan) should hold another hearing on the legality of the wiretaps. The witnesses argued before Judge Bryan that: 1) because they were aggrieved persons (i.e., they had been overheard) they should have been notified by the government as to how it intended to use the wiretaps; and 2) the FISA statute requires the court to determine not only that the electronic surveillance was properly authorized, but that it was also properly conducted, particularly with regard to the minimization requirement.

Judge Bryan let Brown speak on his own behalf, and allowed the witnesses to view the government's memorandum and affidavit filed the previous day in support of its petition that the court conduct an *in camera, ex parte* review of the legality of the FISA surveillance. When court reconvened, the witnesses argued that the court should have reviewed all the logs and transcripts to ensure that the surveillance was lawfully conducted. Judge Bryan ruled that the three witnesses were not targets of the surveillance, but were aggrieved parties. He went on to rule that the applications were properly approved and the minimization requirements were satisfied. Finally, he explained that the documents could not be disclosed in whole or in part without compromising national security. Judge Bryan rejected any need to examine the logs because the witnesses were not targets.

At 3:00 p.m. on the 28th, the grand jury issued a true bill against eight defendants without the benefit of Means', Bellecourt's or Brown's testimony. Because the grand jury was continuing its investigation, Judge Cacheris held contempt hearings and found Bellecourt and Means in contempt and ordered them incarcerated. Brown, still without counsel, was told to appear on August 2, 1988, with counsel, for a contempt hearing. Bellecourt and Means were given a stay until August 2 to file an appeal to this court.

On Tuesday, August 2, Brown appeared before Judge Ellis with counsel as did Means and Bellecourt. The men argued that Judge Bryan's review of the legality of the surveillance was insufficient. Counsel for Brown adopted the arguments made by his colleagues, waived his appearance in the previous hearings on behalf of Brown and any defects therein, and represented to the court that Brown would continue to withhold his testimony. Judge Ellis then found Brown in contempt as well. The court on August 4 extended the stay of the contempt proceedings to August 17 in order to permit all three men to appeal.

Before this court the witnesses urge again that Judge Bryan's review of the lawfulness of the surveillance was inadequate and that they should have been notified of the surveillance and its possible use in grand jury questioning. We reject both claims and affirm the decisions below.

## II.

When the Attorney General files, as in this case, a sworn affidavit stating that disclosure or an adversarial hearing would compromise the national security of the United States, a review of FISA wiretaps must be conducted *in camera* and *ex parte*.[3] 50 U.S.C. § 1806(f). The witness-

---

3. The only exception to this type of review occurs when the documents submitted are not sufficient to allow the court to make a facial determination of legality. Partial disclosure is then permitted only for purposes of determining the legality of the FISA wiretaps. So far, every FISA wiretap review has been *in camera*

and *ex parte*. *See e.g. United States v. Pelton,* 835 F.2d 1067 (4th Cir.1987); *cert. denied,* —— U.S. ——, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. Belfield,* 692 F.2d 141 (D.C.Cir.1982); *United States v. Duggan,* 743 F.2d 59 (2d Cir.1984).

es in the instant case argue simply that Judge Bryan should have more closely scrutinized the materials before him. The learned district court spent three hours reviewing the government's *ex parte* submissions of: (1) approximately 50 applications; (2) the identity of the officer making each application; (3) the identity of the target(s), (4) information establishing probable cause to believe that the target(s) are "foreign powers" or "agents of foreign powers" and that the premises where the foreign powers operate are being used to engage in activities defined under the Act; (5) the approval of the Attorney General; (6) the minimization procedures followed;[4] and (7) the appropriate agency certifications.[5]

Because the parties and the court have discovered no appellate decisions setting forth any criteria governing the extent of review of a FISA wiretap, we turn to domestic wiretap cases for guidance. The United States Supreme Court, in *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), ruled that in contempt proceedings instituted for failure to testify before a grand jury, the witness may avail himself of the defense that the question asked was based on an illegal wiretap. The court did not address the issue of a recalcitrant witness who confronts questions based on lawful electronic surveillance.[6]

The circuit courts throughout the country have accorded grand jury witnesses power to challenge questions based on illegal wiretaps under 18 U.S.C. § 2515,[7] but the extent of that power varies from circuit

---

**4.** 50 U.S.C. § 1801(h) defines "minimization procedures":

(h) "Minimization procedures", with respect to electronic surveillance, means—

(1) specific procedures, which shall be adopted by the Attorney General, that are reasonably designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information;

(2) procedures that require that nonpublicly available information which is not foreign intelligence information, as defined in subsection (e)(1) of this section shall not be disseminated in a manner that identifies any United States person, without such person's consent, unless such person's identity is necessary to understand foreign intelligence information or assess its importance;

(3) notwithstanding paragraphs (1), and (2), procedures that allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for law enforcement purposes; and

(4) notwithstanding paragraphs (1) (2), and (3), with respect to any electronic surveillance approved pursuant to section 1802(a) of this title, procedures that require that no contents of any communication to which a United States person is a party shall be disclosed, disseminated, or used or used for any purpose or retained for longer than twenty-four hours unless a court order under section 1805 of this title is obtained or unless the Attorney General determines that the information indicates a threat of death or serious bodily harm to any person.

We do not understand the witnesses to argue that the government failed to comply with the procedures set forth in this case. Nor is there any showing of noncompliance. The only complaint is that the district court's review of compliance was inadequate. For reasons stated *infra*, we reject that complaint.

**5.** The government has represented that most of these same materials were reviewed by the FISA court before it approved the wiretaps. *See* 50 U.S.C. § 1804.

**6.** Justice White explained:

"Where the government produces a court order ... for the interception, and the witness nevertheless demands a full-blown suppression hearing to determine the legality of the order, there may be room for striking a different accommodation between the due functioning of the grand jury system and the federal wiretap statute. Suppression hearings in these circumstances would result in protracted interruption of grand jury proceedings." *Id.* at 70, 92 S.Ct. at 2372.

**7.** Section 18 U.S.C. 2515 reads:

§ 2515. Prohibition of use as evidence of intercepted wire or oral communications.

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

to circuit. Some of the courts allow an immunized recalcitrant witness to invoke § 2515 as a defense only to the extent that his establishing a violation would not significantly hinder the work of the grand jury. The witness is not entitled to view wiretap documents or to a hearing on the issue of the lawfulness of the surveillance. *See, e.g. In Re Persico,* 491 F.2d 1156, 1162 (2d Cir.), *cert. denied,* 419 U.S. 924, 95 S.Ct. 199, 42 L.Ed.2d 158 (1974) (concluded that a witness could invoke § 2515 in only three narrow circumstances: (1) in the absence of a necessary court order (authorizing the wiretap), (2) if the government concedes the wiretap was unlawful, or (3) if there is a prior judicial adjudication that the wiretap was unlawful); and *Droback v. United States,* 509 F.2d 625, 626 (9th Cir. 1974), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 450 (1975) (same) (declining to permit the witness to bring grand jury proceedings to a halt in order to conduct suppression hearings). *But see In Re Grand Jury Proceedings (McElhinney),* 677 F.2d 738 (9th Cir.1982) (discussed *infra* ).

Other circuits have gone somewhat further and allowed an *in camera* review of wiretap documentation to determine if it is facially valid. *See e.g. In Re Grand Jury Proceedings (Worobyzt),* 522 F.2d 196 (5th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976) and *In the Matter of Special February 1977 Grand Jury (Pavone),* 570 F.2d 674 (7th Cir.), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). But these circuits have not deemed it necessary to conduct full adversarial hearings.

Finally, some circuits have gone even further and allowed limited access to materials such as wiretap applications and supporting affidavits. This disclosure was permitted only upon a determination that the legitimate interests of the government in maintaining secrecy are not at risk. *See In Re Lochiatto,* 497 F.2d 803 (1st Cir. 1974) (concluding that limited disclosure addressed competing objectives: (1) minimiz-

ing delay in grand jury proceedings, (2) protecting and securing the government's interest in secrecy and (3) protecting a defendant's right to assert the defenses Congress established). The *Lochiatto* court also ruled that if the government objects to disclosure on secrecy grounds, the court must decide if sensitive material can first be redacted and then given to the witness. 497 F.2d at 808. If the material cannot be disclosed, the court must review the electronic surveillance applications *in camera.* The Ninth Circuit in *In Re Grand Jury Proceedings (McElhinney),* 677 F.2d 738 (9th Cir.1982), chose to follow the reasoning of *Lochiatto* rather than its earlier cases following *Persico.* The court made clear that if the government objected to disclosure on secrecy grounds, all materials would be reviewed *in camera* and the witness would not be permitted to introduce evidence to challenge the "minimization of the surveillance." 677 F.2d at 741.

█ We believe that in this case the concerns weighing against disclosure are at least as important as in the domestic wiretap cases. Here, the Attorney General has submitted a sworn statement that disclosure would harm the national security interests of the United States, and Judge Bryan has so ruled. We are convinced that Judge Bryan's extensive review of the FISA documentation submitted to him *ex parte* by the government protected all the procedural rights that would be afforded appellants even in the circuits most sympathetic to broad *Gelbard* challenges and in domestic surveillance cases. The witnesses apparently are asking this court to require district court judges to undertake onerous review of the minimization procedures used in conducting a facially valid electronic surveillance before they can be questioned before the grand jury. No court has given immunized grand jury witnesses (who are neither targets of the surveillance or the grand jury investigation) the same bundle of suppression-like rights afforded a criminal defendant. We decline the invitation to be the first.

## III.

 Finally, the witnesses argue that § 1806(c)[8] of FISA requires the government to give notice to grand jury witnesses of the possible use of electronically overheard conversations before any questions are asked of them. We are not convinced that the witnesses in this case suffered from any lack of notice, or were due any notice in the first instance.

Even if the witnesses are statutorily entitled to advance notification before grand jury interrogation, they were in fact informed by the Assistant United States Attorney that they had been overheard on court authorized electronic surveillance. Notice of the overhears was imparted before any questions were asked and certainly before the court conducted a contempt hearing.

Moreover, we believe the witnesses were not entitled to notice under FISA. Neither the statutory language nor the legislative history requires notification prior to *grand jury* questioning. Congress certainly knew how to include grand jury investigations as proceedings before which notice must be given to overheard persons because it said so in the domestic wiretap context.[9] Because the district court's review of the legality of the electronic surveillance was adequate, and because no notification provisions were violated, the decisions below are

AFFIRMED.

---

**8.** 50 U.S.C. § 1806(c) provides:

Whenever the government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this chapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to do so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

**9.** *See* the text of § 2515 reproduced in footnote 6.

We also believe that Congress did not intend to include grand juries in the "other proceedings" language of § 1806(c). Again, we analogize to Title III. The legislative history of that title shows that the term "proceeding" was limited to include only adversary hearings. Sen. Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News, 2112, 2195. All other circuits addressing this issue have agreed that in the Title III context a grand jury investigation is something other than a covered proceeding. *See In Re Grand Jury Proceedings,* 522 F.2d 196 (5th Cir.1975); *Petition of Leppo,* 497 F.2d 954, 956 (5th Cir.1974); *United States v. Friedland,* 444 F.2d 710, 713 (1st Cir. 1971); *United States v. Gelbard,* 443 F.2d 837, 838 (9th Cir.1971), *aff'd* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). Since Congress did not regard grand juries as the sort of "proceeding" that triggers notice requirements in the context of domestic wiretaps, we do not think Congress would regard them in the opposite way in such a closely related context as FISA wiretaps.