UNITED STATES of America

v.

Harold J. NICHOLSON, Defendant.

Criminal No. 96–448–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 3, 1997.

Helen F. Fahey, United States Attorney, for Plaintiff.

Jonathan Shapiro, Liam O'Grady, Washington, D.C., for Defendant.

*MEMORANDUM OPINION*

CACHERIS, District Judge.

This matter comes before the Court on Defendant Harold J. Nicholson's ("the Defendant") Motion requesting this Judge to recuse himself.[1] The Defendant is charged with Espionage, Attempted Espionage, and Conspiracy to Commit Espionage, all in violation of 18 U.S.C. § 794. Motions have been set for February 14, 1997, and Classified Information Procedures Act ("CIPA") hearings and trial have been set for March 3, 1997 and April 14, 1997, respectively.[2]

---

1. The Defendant has also asked this Court to order discovery on four issues, including the "procedures and principles" governing FISA applications, without seeking the Government's prior approval. *See* Local Rule 37. The Court will not grant such discovery at this time, but notes

that the FISA procedures have been public for some time. *See In the Matter of Kevork,* 634 F.Supp. 1002 (C.D.Cal.1985), *aff'd,* 788 F.2d 566 (9th Cir.1986).

2. The Court will not alter this scheduling order.

The basis for the Motion is Defendant's assertion that this Court's impartiality might reasonably be questioned because of this Judge's participation as a member of the United States Foreign Intelligence Surveillance Court ("FISA Court"), established under the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. §§ 1801–1811 ("FISA"). Specifically, the Defendant asserts that this Judge should disqualify himself because: (1) this Judge authorized two FISA orders in this case, and should not be permitted to adjudicate the validity of those orders; (2) this Judge received *ex parte* communications during FISA proceedings, which will cause his impartiality during the trial and sentencing to be reasonably questioned; and (3) "this case will present the first constitutional challenge of the FISA Court's authority to order physical searches without conventional warrants" and thus should not be heard by this Judge, a sitting member of that Court. For the reasons set forth in this Opinion, this Motion is hereby DENIED.

## I.

A litigant has two statutory bases to remove a judge from a case: 28 U.S.C. § 144 and 28 U.S.C. § 455. The Defendant brought this Motion pursuant to a provision within the latter, which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (West 1996). The issue of recusal is assessed from the perspective of a reasonable man; disqualification is proper if a "reasonable factual basis [exists] for doubting the judge's impartiality." *Rice v. McKenzie,* 581 F.2d 1114, 1116 (4th Cir.1978). The Court properly hears this Motion; the statute provides that "a judge shall disqualify *himself.*" 28 U.S.C. § 455 (emphasis added). The Court will now examine each of the Defendant's arguments in turn.

## II.

The Defendant argues that, even if FISA is constitutional, the participation of this Judge in issuing two search authorizations should prevent him from hearing this case. The relevant case law indicates otherwise.

The Court does not know of any precedent directly assessing the effect of a trial judge having previously issued a FISA surveillance order. The Court's analysis will thus be guided by the most recent Supreme Court precedent concerning judicial recusal, as well as analogous instances in which the trial judge participated in preliminary proceedings.

*Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), stands as the Supreme Court's latest word on judicial recusal under section 455. In that case, a criminal defendant argued that the trial judge should have recused himself because his statements and rulings manifested "impatience, disregard for the defense, and animosity" towards the defendant. 510 U.S. at 542, 114 S.Ct. at 1151. In ruling against the defendant, the Supreme Court held:

> [f]irst, judicial rulings alone almost never constitute valid basis for a bias or partiality motion.... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of *prior proceedings,* do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

510 U.S. at 555, 114 S.Ct. at 1157 (emphasis added).

■■■ As the First Circuit recently reiterated, "mere exposure to prejudicial information does not, in itself, establish the requisite factual basis" for recusal. *United States v. Voccola,* 99 F.3d 37, 42 (1st Cir.1996) (quoting *United States v. Giorgi,* 840 F.2d 1022, 1035 (1st Cir.1988)). Accordingly, "facts learned by a judge while acting in his judicial capacity cannot be the basis for disqualification." *Union Independiente de Empleados de Servicios Legales v. Puerto Rico Legal Servs., Inc.,* 550 F.Supp. 1109, 1111 (D.P.R. 1982) (citing *United States v. Patrick,* 542 F.2d 381, 390 (7th Cir.1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977), and *United States v. Bernstein,* 533 F.2d 775, 785 (2d Cir.), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976)); *see*

*also United States v. Gordon,* 61 F.3d 263, 268 (4th Cir.1995). When sitting on the FISA Court, this Judge is properly "acting in his judicial capacity." *See United States v. Johnson,* 1990 WL 78522, at *7 (D.Mass. Apr. 13, 1990), *aff'd,* 952 F.2d 565 (1st Cir. 1991), *cert. denied,* 506 U.S. 816, 113 S.Ct. 58, 121 L.Ed.2d 27 (1992); *United States v. Hovsepian,* 1985 WL 5970, *3 (C.D.Cal. Jan. 28, 1985); *United States v. Megahey,* 553 F.Supp. 1180, 1196–98 (E.D.N.Y.1982), *aff'd, sub nom United States v. Duggan,* 743 F.2d 59 (2d Cir.1984). This Judge holds no opinions regarding this case based on his involvement in FISA proceedings, and certainly harbors none of the "deep-seated favoritism or antagonism" which would require recusal. *See Liteky,* 510 U.S. at 555, 114 S.Ct. at 1157.

The Court believes that the circumstances of the case at bar most closely resemble previous cases in which the trial judge had issued wiretap orders. Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.,* a judge decides whether to grant authority to wiretap the subject of an investigation in a manner similar to a FISA judge's review of search requests. Besides *United States v. Zarowitz,* 326 F.Supp. 90, 93–94 (C.D.Cal. 1971), which will be further analyzed below, this Court knows of no case in which a judge recused himself because of previously authorizing the wiretap which led to the defendant's arrest.

In one Title III case, the First Circuit held that the "mere fact" that the trial judge had authorized "some (or all) of the underlying intercepts" did not require recusal. *Camacho v. Autoridad de Telefonos de Puerto Rico,* 868 F.2d 482, 490 (1st Cir.1989). The court emphasized that "[n]othing about the fact that the judge signed the orders sought by federal officials would lead a reasonable person to question the jurist's impartiality." *Id.* at 491.[3]

On similar facts, the trial judge in *United States v. Garramone* had issued the order authorizing electronic surveillance of the eventual defendant. 374 F.Supp. 256, 259 (E.D.Pa.1974). The judge refused to recuse himself, ruling that "prior judicial exposure to the parties or questions [is] not sufficient to establish personal bias or prejudice." *Id.* at 258. That holding mirrors the Supreme Court's view as expressed in *Liteky.*

In other instances, courts have ruled that a judge need not recuse himself based on participation in pretrial proceedings related to wire tapping. The Second Circuit ruled proper a trial judge's refusal to recuse himself in a case in which he had "conducted an eleven-day hearing on the wire tapping." *United States v. Foddrell,* 523 F.2d 86, 87 (2d Cir.), *cert. denied,* 423 U.S. 950, 96 S.Ct. 370, 46 L.Ed.2d 286 (1975). The Fifth Circuit similarly held that a trial judge need not recuse himself based on his presiding at a pretrial suppression hearing regarding wiretap evidence. *United States v. de la Fuente,* 548 F.2d 528, 541 (5th Cir.) ("Merely presiding at a pretrial suppression hearing does not disqualify a judge from conducting the trial on the merits"), *cert. denied sub nom. Stewart v. United States,* 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249, *and sub nom. Sierra v. United States,* 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977).

The Fourth Circuit has ruled that a trial judge need not testify as to when he gave an oral order to seal tapes of telephonic and oral conversations obtained via electronic surveillance. *United States v. Diana,* 605 F.2d 1307, 1316 (4th Cir.1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). Accordingly, the court held that the judge properly refused to recuse himself pursuant to 28 U.S.C. § 455. *Id.* In doing so, the Fourth Circuit implicitly ruled that a trial judge need not recuse himself in a case in which he granted an order to seal tapes.

The Fourth Circuit has also ruled recusal is not warranted in an instance in which a judge entered rulings on pretrial motions or presided over other parallel proceedings. *See United States v. Parker,* 742 F.2d 127, 128–29 (4th Cir.), *cert. denied,* 469 U.S. 1076, 105 S.Ct. 575, 83 L.Ed.2d 514 (1984). Though not expressly considering a motion to recuse, other courts have allowed the same

---

**3.** That decision was consistent with an earlier case within that Circuit, *Union Independiente de*

*Empleados de Servicios Legales,* 550 F.Supp. 1109.

judge to preside over the trial after having ruled on a pretrial motion to suppress materials obtained pursuant to FISA. *See, e.g., United States v. Miller,* 984 F.2d 1028, 1032 (9th Cir.), *cert. denied,* 510 U.S. 894, 114 S.Ct. 258, 126 L.Ed.2d 210 (1993).

The Defendant's reliance on *Rice v. McKenzie,* 581 F.2d 1114 (4th Cir.1978) is misplaced.[4] In *Rice,* the Fourth Circuit held that a recently appointed federal district judge should not conduct Habeas Corpus review of a conviction over which he presided while still a state court judge. *Id.* at 1117. Certainly, the review of an entire case, as in *Rice,* is significantly different than any review this Court might be called on to conduct here. On a routine basis, district judges are called on to review their own decisions in numerous situations. These instances include a motion for a new trial after the rendering of a verdict in a bench trial and all cases which have been reversed by an appellate court and remanded for the district court's further consideration. *See Liteky,* 510 U.S. at 551, 114 S.Ct. at 1155. The Court is unaware of any successful challenge to a court's ability to review its own decision in these instances.

The Court notes that one case does exist in which a judge recused himself after having issued wiretap authorization. *Zarowitz,* 326 F.Supp. at 93–94. In *Zarowitz,* the judge disqualified himself based on an "appearance of possible personal bias or prejudice" created by the combination of his authorizing wiretaps and issuing court orders compelling testimony of recalcitrant but immunized witnesses. *Id.* at 91–92. The court in that case, however, specifically held that its pretrial participation did *not* provide a basis for recusal under either section 144 or section 455. *Id.* at 92. Even if *Zarowitz* stands for the proposition that a trial judge must recuse himself after authorizing a wiretap, this Court aligns itself with the First Circuit's

rejection of such a per se rule. *See Camacho,* 868 F.2d at 491 n. 8.

Defendant further asserts that a reasonable question as to the Court's impartiality will be raised by a "lack of independent review," since "any decision reached by [this Judge] regarding a FISA warrant is reviewed by the Fourth Circuit only under an abuse of discretion standard, as opposed to the *de novo* review available in non-FISA search and seizure cases." Def.Mot. at 6 n. 2 (citation omitted). First, Defendant fails to cite any support for his assertion that FISA cases are reviewed under a more deferential standard. Moreover, when addressing the denial of a motion to suppress, the Fourth Circuit "reviews pure questions of law de novo and pure questions of fact for clear error. Mixed questions of law and fact are evaluated under a hybrid standard." *United States v. Han,* 74 F.3d 537, 540 (4th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996); *see also United States v. Rusher,* 966 F.2d 868, 873 (4th Cir.), *cert. denied,* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992). If the Defendant were to attack the constitutionality of the physical search portion of FISA, this Court's legal conclusions would be reviewed *de novo* on appeal.[5]

### III.

 As a related grounds for recusal, the Defendant emphasizes that this Judge received *ex parte* information during the FISA proceedings. The case law, though, does not require a recusal in such circumstances.

In addition to the aforementioned cases, this Court has examined decisions in which a district judge reviewed FISA surveillance material *ex parte* and *in camera.* With the exception of one case cited by the Defendant, *United States v. McKinley,* 995 F.2d 1020

---

**4.** The Defendant also relies on inapposite cases in which the judge received information via extrajudicial means. *See, e.g., United States v. Looney,* 501 F.2d 1039, 1040 (4th Cir.1974) (judge confronted witness in a "room near the courtroom," outside of the judicial proceedings).

**5.** The Court is aware of one case, albeit from another circuit, in which the denial of a suppres-

sion motion was reviewed under an abuse of discretion standard in a FISA case. *See Miller,* 984 F.2d at 1032. However, the trial court in *Miller* had denied the motion as untimely, in violation of Rule 12(b)(3) of the Federal Rules of Criminal Procedure, rather than on legal or factual grounds. Accordingly, *Miller* is of little help to the Defendant on this issue.

(11th Cir.1993), no other judge recused himself after conducting an *in camera ex parte* review.[6] Furthermore, the Eleventh Circuit did not comment on the propriety of the trial judge's recusal in *McKinley*, and that court had previously condoned *ex parte* review in *Isa*, 923 F.2d at 1306.

The Defendant claims that the courts which have upheld pre-arrest surveillance warrants permitted "full and unfettered access to the warrant and its underlying application." Def.Mot. at 7. This Court knows of no instance in which a court has required disclosure or an adversary hearing in determining the legality of a FISA surveillance. *See In re Grand Jury Proceedings, Grand Jury No. 87–4*, 856 F.2d 685, 686 n. 3 (4th Cir.1988) ("So far, every FISA wiretap review has been *in camera* and *ex parte* ").

### IV.

■ On February 9, 1995, President Clinton signed Executive Order 12949, which expanded FISA to include physical searches. The Defendant has informed the Court that he intends to challenge the constitutionality of this expansion of FISA. The Defendant argues:

> This case will present the first constitutional challenge of the FISA Court's authority to order physical searches without conventional warrants.... Mr. Nicholson and the public are entitled to, in the first

major attack on the search aspects of FISA, a judge without past involvement in FISA activities.... In short, Mr. Nicholson's constitutional challenge—the first of its kind since enactment of the search warrant provisions of FISA—should be resolved by a jurist having no prior involvement with FISA court proceedings.

Def.Mot. at 3, 5.

This Court expresses no opinion as to whether the constitutional protections differ for physical searches versus electronic surveillance searches. The Court will note, however, that this case would be far from the first to examine the constitutionality of FISA.[7]

This Court holds, and will maintain, an open mind concerning any novel challenges this Defendant raises concerning FISA. The Court emphasizes, however, the scope of *United States v. Pelton*, 835 F.2d 1067 (4th Cir.1987), *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). In that case, the Fourth Circuit considered the defendant's argument that

> anything less than the traditional probable cause standard for the issuance of a search warrant violates the Fourth Amendment. He [the defendant] contends that the need for foreign intelligence does not justify any exception to the warrant requirement. We [the Fourth Circuit] disagree.

---

6. *See, e.g., United States v. Isa*, 923 F.2d 1300, 1306 (8th Cir.1991); *United States v. Hamide*, 914 F.2d 1147, 1152–53 (9th Cir.1990); *United States v. Posey*, 864 F.2d 1487, 1490–91 (9th Cir.1989); *United States v. Sarkissian*, 841 F.2d 959, 964 (9th Cir.1988); *United States v. Badia*, 827 F.2d 1458, 1463–64 (11th Cir.1987), *cert. denied*, 485 U.S. 937, 108 S.Ct. 1115, 99 L.Ed.2d 275 (1988); *United States v. Ott*, 827 F.2d 473 (9th Cir.1987); *United States v. Belfield*, 692 F.2d 141, 146–47 (D.C.Cir.1982); *United States v. Butenko*, 494 F.2d 593, 607 (3d Cir.), *cert. denied*, 419 U.S. 881, 95 S.Ct. 147, 42 L.Ed.2d 121 (1974); *United States v. Rahman*, 861 F.Supp. 247, 250–51 (S.D.N.Y.1994); *United States v. Thomson*, 752 F.Supp. 75, 79 (W.D.N.Y.1990); *Johnson*, 1990 WL 78522, at *1; *United States v. Spanjol*, 720 F.Supp. 55, 58–59 (E.D.Pa.1989); *United States v. Hawamda*, 1989 WL 235836, at *1 (E.D.Va. April 17, 1989); *In the Matter of Kevork*, 634 F.Supp. 1002; *Hovsepian*, 1985 WL 5970, at *2; *United States v. Falvey*, 540 F.Supp.

1306 (E.D.N.Y.1982); *In re Flanagan*, 533 F.Supp. 957, 961 (E.D.N.Y.), *rev'd on other grounds*, 691 F.2d 116 (2d Cir.1982).

7. *See United States v. Pelton*, 835 F.2d 1067 (4th Cir.1987), *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988), and n. 5, below; *see also United States v. Cavanagh*, 807 F.2d 787, 790–92 (9th Cir.1987); *Belfield*, 692 F.2d at 148 (D.C. Circuit rejected argument that FISA violates Fifth and Sixth Amendments); *Spanjol*, 720 F.Supp. at 58; *United States v. Ott*, 637 F.Supp. 62 (E.D.Cal.1986), *aff'd*, 827 F.2d 473 (9th Cir. 1987); *In the Matter of Kevork*, 634 F.Supp. at 1010; *Hovsepian*, 1985 WL 5970 at *2; *Falvey*, 540 F.Supp. at 1312–13; *see also Ellsberg v. Mitchell*, 709 F.2d 51, 66 n. 66 (D.C.Cir.1983), *cert. denied, sub nom Russo v. Mitchell*, 465 U.S. 1038, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984) (noting that FISA had theretofore survived all constitutional challenges).

*Pelton,* 835 F.2d at 1075.[8]

The Fourth Circuit further held that

[w]e find the provisions of FISA to be 'reasonable both in relation to the legitimate need of the Government for intelligence information and the protected rights of our citizens,' ... and therefore compatible with the Fourth Amendment.

*Id.* (quotation omitted). In short, in *Pelton,* the Fourth Circuit ruled that FISA, as it existed prior to 1995, was wholly constitutional.

In support of his contention that a sitting member of the FISA Court should recuse himself from ruling on the constitutionality of FISA, the Defendant relies on the opinion of Justice Breyer, then Chief Judge of the First Circuit, concerning recusal. *United States v. Wright,* 873 F.2d 437, 445–447 (1st Cir.1989) (Breyer, J., writing separately); *see also United States v. Glick,* 946 F.2d 335, 336 (4th Cir.1991) (expressing agreement with Justice Breyer's analysis in *Wright* ). As a member of the United States Sentencing Commission, Justice Breyer had been "extensively involved in the drafting and promulgation of the [Sentencing] guidelines." *Glick,* 946 F.2d at 336. As the Defendant accurately notes, Def.Mot. at 4, Justice Breyer received recommendations from the Justice Department and wrote that he would recuse himself in instances in which "there is a substantial challenge, whether constitutional or not, mounted against the existence of the Guide-lines system and hence of the Sentencing Commission itself." *Wright,* 873 F.2d at 447. Justice Breyer, though, continued his analysis by stating that this category of cases requiring recusal "does not include those cases in which a challenge to the Guidelines, if successful, may require a substantial revision of the Guidelines, but will not jeopardize the continued existence of the Guidelines system." *Id.*

The Fourth Circuit, whose precedents govern this Court, has ruled that the FISA Court is constitutional, and held that FISA as enacted prior to the 1995 expansion "meets constitutional requirements." *Pelton,* 835 F.2d at 1075. In the case at bar, the Defendant's challenge to the physical search element of FISA, "if successful, may require a substantial revision of" FISA, but such a challenge would *not* "jeopardize the continued existence of" FISA or the FISA Court. Accordingly, even if it were appropriate to adopt Justice Breyer's standard, application of that position would cut *against* recusal in the case at bar.

In other instances, the fact that a judge created a given procedure did not require recusal from subsequent challenges to those rules.[9] Importantly, this Judge did not create FISA or the FISA Court, nor did he have any role in their creation. His presence on the FISA Court is most properly analogized to his role as an Article III judge.[10]

---

**8.** The Second Circuit expressed the same opinion in *United States v. Duggan:*

A fortiori we reject defendants' argument that a FISA order may not be issued consistent with the requirements of the Fourth Amendment unless there is a showing of probable cause to believe the target has committed a crime.

743 F.2d at 73 n. 5. The First Circuit has also dismissed as "without merit" the argument that "the FISA provisions governing the surveillance of United States citizens contravene the Fourth Amendment's prohibition of warrantless searches." *United States v. Johnson,* 952 F.2d 565, 573 (1st Cir.1991), *cert. denied,* 506 U.S. 816, 113 S.Ct. 58, 121 L.Ed.2d 27 (1992). Thus, all the Circuits to assess the issue have ruled that FISA is constitutional.

**9.** Though the Supreme Court promulgated the Federal Rules of Civil Procedure ("Rules"), its members did not recuse themselves from considering the "validity, meaning or consistency" of those Rules. *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946). Similarly, the Circuit Courts of Appeals have adjudicated the legality of their own local rules. *See, e.g., Home Life Ins. Co. N.Y. v. Equitable Equip. Co., Inc.,* 694 F.2d 402, 403 (5th Cir.1982).

**10.** The [FISA] Act merely directs judges to make findings regarding the time, persons, and places at which the surveillance is directed and regarding governmental compliance with the procedures of the Act, in accordance with objective definitions provided within the Act itself. The determinations to be made are not unlike the determinations of fact and law made throughout the judicial process in a wide variety of other contexts.

*Johnson,* 1990 WL 78522 at *7 (quoting *Megahey,* 553 F.Supp. at 1198); *accord Hovsepian,* 1985 WL 5970 at *3.

Furthermore, this Court knows of at least two instances in which a sitting member of the FISA Court examined the legality of materials obtained pursuant to FISA. *In re Grand Jury Proceedings, Grand Jury No. 87–4*, 856 F.2d 685, 687 (4th Cir.1988); *United States v. Hawamda*, 1989 WL 235836 (E.D.Va. April 17, 1989); *see also In the Matter of Kevork*, 634 F.Supp. 1002 (U.S. District Judge Lacey sat as a member of a special Commission which interviewed individuals about materials obtained via FISA, and then, in his judicial capacity during subsequent criminal proceedings, conducted an *in camera ex parte* review of FISA materials and ruled FISA to be constitutional). In one of those cases, the Fourth Circuit affirmed the district court's *in camera* review of FISA materials after a District Judge in this Court, then a sitting member of the FISA Court, had ruled twice on the legality of wiretaps authorized pursuant to FISA. *In re Grand Jury Proceedings*, 856 F.2d at 687.

### V.

Applying the law as set forth in *Liteky* and elsewhere, the Court finds that adequate grounds to require recusal of this Judge do not exist. A reasonable person who examines this case and the applicable legal precedents would not find a reasonable factual basis to question the Court's impartiality. The case law overwhelmingly speaks against recusal in this case. Any additional information concerning this case would have been obtained by this Judge solely through prior judicial proceedings in this case, "an indisputedly legitimate source of supplemental facts." *United States v. Gordon*, 61 F.3d 263, 268 (4th Cir.1995) (citation omitted).[11]

11. As a final point, the Court notes the timing of this Motion. At the arraignment on December 20, 1996, the Court advised all of the parties of his participation in prior FISA proceedings. During the subsequent five weeks, this Court has been very actively involved in this case. Specifically, the Court arraigned the Defendant on the superseding indictment; imposed the protective order; set a trial date; granted the Defendant's motion for a continuance of the trial date; corresponded with defense counsel regarding additional compensation and expedited payment of counsel fees for defense counsel; assisted in ensuring that all defense attorneys received the requisite security clearances as expeditiously as

Accordingly, the Defendant's Motion is hereby DENIED.

An appropriate Order shall issue.

### ORDER

For the reasons stated in the attached Memorandum Opinion, it is hereby ORDERED that:

(1) the Defendant's Motion which requests that this Judge recuse himself is DENIED;

(2) the scheduling order remains the same; and

(3) the Clerk of the Court shall forthwith provide a copy of this Order and Memorandum Opinion to all Counsel of Record.

possible; coordinated a secure room within the courthouse which the Defendant and his counsel could use to examine documents; heard argument and ruled on a potential detention site for the Defendant; denied the Defendant's motion to revoke the detention order; permitted the Defendant to file an *ex parte* motion under seal; granted the Defendant's motion to file an *ex parte* statement of materiality; set hearing dates pursuant to CIPA; and granted requests from the Defendant for visitors. At no time during the five weeks has the Defendant or counsel for the Defendant in any way mentioned this Court's FISA involvement as a grounds for recusal.