692 F.2d 141
 223 U.S.App.D.C. 417
 UNITED STATES of America
v.
David BELFIELD, aka Daoud Salahuddin Ali Abdul-Mani, aka Lee
Curtis Manning, Appellant.
UNITED STATES of America
v.
David BELFIELD, aka Daoud Salahuddin Horace Anthony Butler,
aka Ahmed Rauf, Appellant.
 Nos. 81-2152, 81-2155.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 5, 1982.
Decided Nov. 5, 1982.
 
 Appeals from the United States District Court for the District of Columbia (Miscellaneous No. 81-00215).
 Linda Jacobson with whom William J. Mertens, Washington, D.C., was on the brief for appellant in No. 81-2152.
 Michael Stephen Spearman, Washington, D.C. (appointed by this court) with whom Thomas Abbenante, Washington, D.C., was on the brief for appellant in No. 81-2155.
 Donald B. Nicholson, Atty., Dept. of Justice, with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, Lawrence Lippe and Robert W. Ogren, Attys., Dept. of Justice, Washington, D.C., were on the brief for appellee.
 Before WILKEY, BORK and SCALIA, Circuit Judges.
 Opinion for the Court filed by Circuit Judge WILKEY.
 WILKEY, Circuit Judge:
 
 
 1
 This appeal is taken from a determination by the district court that certain electronic surveillance to which appellants were incidentally subject was legal under the Foreign Intelligence Surveillance Act of 1978.[1] The district court made that determination ex parte after examination of an in camera Exhibit. Appellants challenge the procedures followed by the district court on both statutory and constitutional grounds. We affirm.
 
 I. BACKGROUND
 A. Factual Background
 
 2
 Appellants, Horace Butler and Ali Abdul-Mani, were charged in the Superior Court of the District of Columbia with conspiracy to murder, accessory after the fact, grand larceny, unauthorized use of vehicle, and perjury in connection with the assassination on 22 July 1980 of Ali Akbar Tabatabai, the President of the Iran Freedom Foundation. Prior to trial, appellants requested disclosure of any electronic surveillance covering them. The Government answered that each appellant was overheard once on separate occasions during the course of electronic surveillance authorized by the U.S. Foreign Intelligence Surveillance Court (USFISC) pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA). Appellants were not the targets of this surveillance. Rather, they were incidentally overheard during the course of surveillance of another target.
 
 
 3
 The Government presented the logs of the overhears to Judge Ugast of the Superior Court for in camera examination. He ruled from the bench on 26 October 1981 that the overhears were irrelevant, immaterial, and not discoverable under Brady v. Maryland.[2] The Government did not use the overhears as evidence in the case nor, it claims, any fruits thereof. Appellants were subsequently convicted as accessories after the fact to first degree murder and of perjury and were sentenced to prison terms.
 
 
 4
 Meanwhile, on 8 October 1981 the Government filed a petition in the U.S. District Court for the District of Columbia for a judicial determination of the legality of the surveillance, as authorized in 50 U.S.C. Sec. 1806(f). The Government asked for an ex parte determination based on an in camera Exhibit containing the logs of the overhears, the application for surveillance and supporting papers, and the orders of USFISC with respect thereto. In support of this request, the Attorney General filed a declaration stating that disclosure of these materials or an adversary hearing would harm the national security of the United States. Appellants filed a response requesting disclosure and an adversary hearing.
 
 
 5
 The district court, per Judge Gasch, ruled on 22 October 1981 that, based upon consideration of the papers filed by the Government and the opposition thereto and the Government's in camera Exhibit, the electronic surveillance at issue was legal. This appeal followed. Appellants are not directly challenging the legality of the surveillance. Rather, they are seeking to participate in the determination of legality. Appellants are challenging the district court's decision to resolve the issue ex parte and in camera. They claim that the district court's failure to order disclosure of the in camera Exhibit and his refusal to allow an adversary hearing on the question of the legality of the surveillance constituted an abuse of discretion under FISA or, alternatively, violated appellants' fifth amendment due process rights and their sixth amendment right to counsel.[3]
 
 B. FISA
 
 6
 Electronic surveillance without judicial warrant has been conducted by the Executive branch since at least 1927.[4] Its legitimacy was originally based on the Supreme Court's 1928 determination in the Olmstead case that the fourth amendment does not apply to such activities.[5] In 1967, in Katz v. United States,[6] the Supreme Court overruled Olmstead. The next year Congress passed the Omnibus Crime Control and Safe Streets Act which, in Title III, provided procedures for obtaining electronic surveillance warrants in certain criminal investigations and declared other electronic surveillance by the government or by private parties unlawful.[7]
 
 
 7
 This legislation, however, was inadequate to certain national security and intelligence needs, since it required probable cause to believe that a crime was contemplated, and merely deferred but did not eliminate service of the warrant.[8] Thus, despite Katz, the Executive continued to assume that the fourth amendment's usual but not invariable warrant requirement[9] (as opposed to its inflexible requirement of reasonableness) did not apply when the President was acting pursuant to his powers to protect the national security or to conduct the nation's foreign affairs. Such an exception was left available (though not clearly endorsed) by language both in Katz[10] and in the 1968 statute.[11]
 
 
 8
 In 1972 the Supreme Court again returned to the subject, holding in Keith[12] that the asserted "national security" exception to the warrant requirement does not exist insofar as purely "domestic threats to the national security" are concerned.[13] It explicitly left unaddressed "the issues which may be involved with respect to activities of foreign powers or their agents."[14] Warrantless Executive surveillance in the latter context continued and was approved by several courts of appeals.[15]
 
 
 9
 Responding to post-Watergate concerns about the Executive's use of warrantless electronic surveillance, Congress, with the support of the Justice Department, acted in 1978 to establish a regularized procedure for use in the foreign intelligence and counterintelligence field. With a few exceptions irrelevant to our concerns,[16] FISA requires a court order authorizing foreign intelligence electronic surveillance. To get such an order, a federal officer, having first obtained the Attorney General's approval, must submit an application to one of the seven USFISC judges.[17] The application must detail among other things the identity of the target; the information relied on by the Government to demonstrate that the target is a "foreign power" or an "agent of a foreign power;" evidence that the place where the surveillance will occur is being used, or is about to be used, by the foreign power or its agent; the type of surveillance to be used; the minimization procedures to be employed; and certification that the information being sought is "foreign intelligence information."[18]
 
 
 10
 Before issuing the order, the USFISC judge must make specific findings, including that the proposed minimization procedures are proper and that there is probable cause to believe that--
 
 
 11
 (A) the target of the electronic surveillance is a foreign power or an agent of a foreign power: Provided, That no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States; and
 
 
 12
 (B) each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power ....[19]
 
 
 13
 Any evidence obtained or derived from the electronic surveillance may be used in a criminal proceeding only in accordance with the procedures outlined in 50 U.S.C. Sec. 1806. First, authorization to use the information in a criminal proceeding must be obtained from the Attorney General.[20] Then, the Government must notify the court in which the criminal proceeding is pending and the "aggrieved person" against whom the information will be offered.[21] The aggrieved person may make a motion to suppress on the ground that the surveillance was illegal.
 
 
 14
 Alternatively, as in this case, even when the Government has purported not to be offering any evidence obtained or derived from the electronic surveillance, a criminal defendant may claim that he has been the victim of an illegal surveillance and seek discovery of the logs of the overhears to ensure that no fruits thereof are being used against him.[22] In either event, the Government may forestall the defendant's suppression or discovery motions by filing a petition with the United States District Court in the area where the criminal trial is taking place asking for a determination of the legality of the surveillance.[23]
 
 
 15
 If the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, then the district court is supposed to make this determination ex parte based upon an in camera examination of the relevant materials. The court may disclose these materials to the aggrieved person "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance."[24] Congress was adamant in enacting FISA that the "carefully drawn procedures" of this section are not to be "bypassed by the inventive litigant using a new statute, rule or judicial construction."[25]
 
 II. ANALYSIS
 A. Statutory Claims
 
 16
 Appellants claim first that the district court's failure to disclose the Exhibit and hold an adversary hearing was an abuse of discretion under FISA. Appellants argue on analogy with Alderman v. U.S.[26] that "[q]uestions as to the legality of surveillance conducted under FISA are far too complex to be determined without disclosure and adversary proceedings."[27] In other words, appellants argue that in every case "such disclosure is necessary to make an accurate determination of the legality of the surveillance."[28]
 
 
 17
 As a matter of statutory interpretation with an eye to Congressional intent this absolutist view cannot be correct. The language of section 1806(f) clearly anticipates that an ex parte, in camera determination is to be the rule. Disclosure and an adversary hearing are the exception, occurring only when necessary. The legislative history explains that such disclosure is "necessary" only where the court's initial review of the application, order, and fruits of the surveillance indicates that the question of legality may be complicated by factors such as "indications of possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order."[29]
 
 
 18
 An examination of the in camera Exhibit in this case demonstrates that no such factors are present here. The target of the surveillance is clearly identified; the foreign policy purpose patently evident; the facts justifying the surveillance amply supported and certified to by responsible officials; and the results of the surveillance are well within the bounds set by the minimization procedures. It is readily apparent that all the statutory requirements have been met. Furthermore, the harm to U.S. security interests which would stem from disclosure of the Exhibit is equally evident.
 
 
 19
 The determination of legality in this case is not complex. The in camera Exhibit consists of only 42 pages. All four judges (not counting the original USFISC judge) who have examined the Exhibit agree upon the legality of the surveillance. Indeed, the surveillance is so clearly supported by the documents in the Exhibit that it would have been an abuse of discretion for the district court to order disclosure.
 
 
 20
 The demand for an adversary hearing must fall with the demand for disclosure of the in camera Exhibit. They are inextricably linked. There would be little purpose in disclosure unless appellants were then allowed to present their case against the legality of the surveillance. Thus, appellants are correct that if disclosure were ordered, they would be entitled to an adversary hearing. Conversely, given that disclosure is not necessary in this case, no purpose would be served by an evidentiary hearing. Appellants would be punching at shadows. The judge could not even make rulings upon the relevance of evidence to be presented without indirectly disclosing that which Congress has said must be kept secret.
 
 
 21
 In sum, the district court's decision to pass upon the legality of the surveillance based upon an ex parte examination of an in camera Exhibit was in keeping with the procedures contemplated by Congress when it enacted FISA.[30]B. Constitutional Claims
 
 
 22
 In the alternative, appellants claim that FISA, in so far as it does not require disclosure and an adversary hearing, violates the fifth and sixth amendments. Appellants argue that the mandatory disclosure provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (OCCA)[31] constitute a minimal requirement that must be read into FISA to save it from constitutional infirmity.
 
 
 23
 Appellants, however, completely ignore the nature of the national interests implicated in matters involving a foreign power or its agents. OCCA covers domestic, criminal surveillance. FISA is concerned with foreign intelligence surveillance. In the former, Congress emphasized the privacy rights of U.S. citizens. In the latter, Congress recognized the need for the Executive to engage in and employ the fruits of clandestine surveillance without being constantly hamstrung by disclosure requirements.[32] The statute is meant to "reconcile national intelligence and counterintelligence needs with constitutional principles in a way that is consistent with both national security and individual rights."[33] In FISA the privacy rights of individuals are ensured not through mandatory disclosure, but
 
 
 24
 through its provisions for in-depth oversight of FISA surveillance by all three branches of government and by a statutory scheme that to a large degree centers on an expanded conception of minimization that differs from that which governs law-enforcement surveillance.[34]
 
 
 25
 We appreciate the difficulties of appellants' counsel in this case. They must argue that the determination of legality is so complex that an adversary hearing with full access to relevant materials is necessary. But without access to the relevant materials their claim of complexity can be given no concreteness. It is pure assertion.
 
 
 26
 Congress was also aware of these difficulties. But it chose to resolve them through means other than mandatory disclosure. In FISA Congress has made a thoroughly reasonable attempt to balance the competing concerns of individual privacy and foreign intelligence. As noted, oversight of electronic surveillance is provided by all three branches of government. Appellants are understandably reluctant to be excluded from the process whereby the legality of a surveillance by which they were incidentally affected is judged. But it cannot be said that this exclusion rises to the level of a constitutional violation. Four judges have now examined the Exhibit and determined that it amply supports the determination of legality originally made by the USFISC judge and that the minimization procedures approved in the original order have been followed. Those four judges have also specifically found that appellants' participation is not "necessary to a determination of the legality of the surveillance."A claim that disclosure and an adversary hearing are constitutionally required goes directly contrary to all pre-FISA precedent on point. In this circuit and in others, it has constantly been held that the legality of electronic, foreign intelligence surveillance may, even should, be determined on an in camera, ex parte basis. In U.S. v. Lemonakis,[35] this court stressed that "[i]n a field as delicate and sensitive as foreign intelligence gathering," as opposed to domestic, criminal surveillance, "there is every reason why the court should proceed in camera and without disclosure" to determine the legality of a surveillance.
 
 
 27
 It is not in the national interest for revelation of either the existence or the product of the former to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant accidentally and peripherally touched ....[36]
 
 
 28
 The point was made again en banc in Zweibon v. Mitchell.[37] Other circuits have uniformly adopted the same view.[38]
 
 
 29
 The fact that these cases are pre-FISA does not impair their precedential value. If anything, the legality inquiry mandated by FISA is easier for a court to perform ex parte than the pre-FISA inquiry into the legality of warrantless electronic surveillance. Previously, courts had to determine whether the surveillance fell within the President's inherent power to conduct electronic surveillance for foreign intelligence purposes. The FISA inquiry at issue here is merely to determine whether the application and order comply with the statutory requirements. In this case it is evident that they do. Furthermore, as noted, FISA incorporates nonjudicial safeguards to ensure the legality of the surveillance. No further judicial procedures are necessary for an accurate determination. No further judicial procedures are necessary adequately to safeguard appellants' rights.
 
 
 30
 Accordingly, the judgment of the district court is
 
 
 31
 Affirmed.
 
 
 
 [1]
 50 U.S.C. Secs. 1801-1811 (Supp. IV 1980)
 
 
 [2]
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)
 
 
 [3]
 Appellants' criminal convictions or the propriety of any evidence used therein are not directly at issue here. Thus, for example, we are not called upon to determine whether any fruits of the overhears might have been used by the Government in building its criminal case
 
 
 [4]
 For a detailed history of warrantless electronic surveillance, see Intelligence Activities, vol. 5, The National Security Agency and Fourth Amendment Rights: Hearings Before the Select Committee to Study Government Operations with Respect to Intelligence Activities, 94th Cong., 1st Sess. 84 (1975) (statement of Attorney General Edward H. Levi) [hereinafter cited as Hearings ]; S.REP. NO. 95-604, 95th Cong., 1st Sess. (1977); Note, The Foreign Intelligence Surveillance Act: Legislating a Judicial Role in National Security Surveillance, 78 Mich.L.Rev. 1116 (1980)
 
 
 [5]
 Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). Even when, in the late 1930's, the Federal Communications Act's prohibition against unauthorized disclosure of wire communications was held to prevent court use of government wiretaps, Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937), and of the fruits of government wiretaps, Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), the Justice Department continued to employ warrantless electronic surveillance in cases involving national security or threat to human life. See Hearings, supra note 1, at 85-87 (statement of Attorney General Edward H. Levi). The use of ordinary search warrants would not have been practicable for electronic surveillance, since such warrants must be served before the search is conducted
 
 
 [6]
 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)
 
 
 [7]
 18 U.S.C. Secs. 2510-2520 (1976)
 
 
 [8]
 18 U.S.C. Sec. 2518(3)(a), (b). Much valuable intelligence information, and even some counterintelligence information, has nothing to do with the contemplated commission of a crime. Furthermore, notice that the surveillance has been conducted, even years after the event, may destroy a valuable intelligence advantage
 
 
 [9]
 For example, a warrant is not required in exigent circumstances. E.g., Warden v. Hayden, 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967)
 
 
 [10]
 Katz stated:
 Whether safeguards other than prior authorization by a magistrate would satisfy the Fourth Amendment in a situation involving the national security is a question not presented by this case.
 389 U.S. at 358 n. 23, 88 S.Ct. at 515 n. 23.
 
 
 [11]
 18 U.S.C. Sec. 2511(3) provided as follows:
 (3) Nothing contained in this chapter or in section 605 of the Communications Act of 1934 (48 Stat. 1143; 47 U.S.C. 605) shall limit the constitutional power of the President to take such measures as he deems necessary to protect the Nation against actual or potential attack or other hostile acts of a foreign power, to obtain foreign intelligence information deemed essential to the security of the United States, or to protect national security information against foreign intelligence activities. Nor shall anything contained in this chapter be deemed to limit the constitutional power of the President to take such measures as he deems necessary to protect the United States against the overthrow of the Government by force or other unlawful means, or against any other clear and present danger to the structure or existence of the Government. The contents of any wire or oral communication intercepted by authority of the President in the exercise of the foregoing powers may be received in evidence in any trial hearing, or other proceeding only where such interception was reasonable, and shall not be otherwise used or disclosed except as is necessary to implement that power.
 
 
 [12]
 United States v. United States District Court, 407 U.S. 297, 323-24, 92 S.Ct. 2125, 2139-40, 32 L.Ed.2d 752 (1972)
 
 
 [13]
 Id. at 322, 92 S.Ct. at 2139
 
 
 [14]
 Id. at 321-22, 92 S.Ct. at 2138-39
 
 
 [15]
 See United States v. Truong Dinh Hung, 629 F.2d 908, 914-15 (4th Cir. 1980), cert. denied, --- U.S. ----, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982); U.S. v. Buck, 548 F.2d 871, 875 (9th Cir.), cert. denied, 434 U.S. 890, 98 S.Ct. 263, 54 L.Ed.2d 175 (1977); United States v. Butenko, 494 F.2d 593, 605 (3d Cir.), cert. denied sub nom. Ivanov v. U.S., 419 U.S. 881, 95 S.Ct. 147, 42 L.Ed.2d 121 (1974); United States v. Brown, 484 F.2d 418, 426 (5th Cir.1973), cert. denied, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974). In Zweibon v. Mitchell, 516 F.2d 594, 619-20 (D.C.Cir.1975) (en banc), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 187 (1976), the plurality suggested in dicta that this type of warrantless surveillance might be unconstitutional
 
 
 [16]
 See 50 U.S.C. Secs. 1802, 1805(e)
 
 
 [17]
 Id. Sec. 1804(a)
 
 
 [18]
 See Id. Sec. 1804(a)(1)-(11)
 
 
 [19]
 Id. Sec. 1805(a)(3). Cf. Id. Sec. 1801(i) (defining "United States person")
 
 
 [20]
 Id. Sec. 1806(b)
 
 
 [21]
 Id. Sec. 1806(c). An aggrieved person is defined as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." Id. Sec. 1801(k). Thus, though appellants were not targets of the surveillance, they qualify as aggrieved persons because their "communications ... were subject to electronic surveillance."
 
 
 [22]
 Cf. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)
 
 
 [23]
 50 U.S.C. Sec. 1806(f)
 
 
 [24]
 Id. (emphasis added)
 
 
 [25]
 H.R.REP. NO. 95-1283, 95th Cong., 2d Sess. 91 (1978). See also S.REP. NO. 95-701, 95th Cong., 2d Sess. 63 (1978) U.S.Code Cong. & Admin.News, p. 3904
 
 
 [26]
 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)
 
 
 [27]
 Brief for Appellant, Ali Abdul-Mani at 7. See also Brief for Appellant, Horace Anthony Butler at 6-7
 
 
 [28]
 50 U.S.C. Sec. 1806(f)
 
 
 [29]
 S.REP. NO. 95-701, 95th Cong., 2d Sess. 64 (1978)
 
 
 [30]
 At oral argument appellants took a modified position, arguing that the case should be remanded for specific findings of fact. Apparently, appellants would have us require, first, a specific statement that, after balancing the competing concerns, the court finds that appellants' participation in the determination of legality is unnecessary and, second, specific findings to the effect that each of the statutory requirements for the legality of the surveillance has been satisfied
 As for the first point, such a statement was made by the district court. In its order the court stated that it considered not only the papers submitted by the Government, but also "the opposition thereto" requesting disclosure and an adversary hearing. Thus, the court did balance the competing concerns before deciding to resolve the issue ex parte and in camera.
 As for the second point, a finding of legality entails a finding that all the statutory requirements have been met. Nothing would be served by requiring the district court to reproduce the statute in its order since the court could not then go on to explain how the requirements have been met without disclosing the very information it has determined must be kept secret.
 
 
 [31]
 18 U.S.C. Sec. 2518(9) (1976) (the contents of an intercepted communication may not be used in any proceeding unless the aggrieved person is first furnished with a copy of the application and court order authorizing the interception)
 
 
 [32]
 As noted above, although the Supreme Court never reached the issue, the weight of circuit court decisions indicated that foreign intelligence surveillance could be conducted by the President without any warrant at all. See note 8, supra
 
 
 [33]
 S.REP. NO. 95-701, 95th Cong., 2d Sess. 16 (1978)
 
 
 [34]
 Schwartz, Oversight of Minimization Compliance Under the Foreign Intelligence Surveillance Act: How the Watchdogs are Doing Their Job, 12 RUTGERS L.J. 405, 408 (1981). The executive branch is responsible for promulgating minimization procedures, establishing and complying with internal review procedures, and supervising warrantless surveillance. Id. at 414-33. The judiciary is responsible for passing on applications, assessing legality at subsequent proceedings, and imposing civil and criminal liability for violations. Id. at 436-72. Finally, Congress receives a variety of reports, both formal and informal, concerning all electronic surveillance conducted under the Act. Id. at 472-83
 
 
 [35]
 485 F.2d 941, 963 (D.C.Cir.1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974)
 
 
 [36]
 Id
 
 
 [37]
 516 F.2d 594, 606 n. 14 (en banc) (plurality opinion) ("a trial judge may initially determine in camera whether a surveillance is lawful"), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 187 (1976)
 
 
 [38]
 See, e.g., United States v. Ajlouny, 629 F.2d 830, 839 (2d Cir.1980), cert. denied, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981); United States v. Butenko, 494 F.2d 593, 607 (3rd Cir.) (en banc), cert. denied sub nom. Ivanov v. United States, 419 U.S. 881, 95 S.Ct. 147, 42 L.Ed.2d 121 (1974); United States v. Brown, 484 F.2d 418, 425-27 (5th Cir.1973), cert. denied, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974)
 The Supreme Court never decided, pre-FISA, what procedures the district courts were to follow in making a threshold determination of the lawfulness of electronic surveillance. Giordano v. United States, 394 U.S. 310, 314, 89 S.Ct. 1163, 1165, 22 L.Ed.2d 297 (1969) (Stewart, J., concurring). The Court did suggest, however, that adversary proceedings and full disclosure were not necessarily required "for resolution of every issue raised by an electronic surveillance." Taglianetti v. United States, 394 U.S. 316, 317, 89 S.Ct. 1099, 1100, 22 L.Ed.2d 302 (1969) (per curiam). To the contrary, such protection will not be required when the task is such that in camera procedures will adequately safeguard the "aggrieved party's" constitutional rights. Id. at 317-18, 89 S.Ct. at 1100-01. See also United States v. Ajlouny, 629 F.2d 830, 839 (2d Cir.1980), cert. denied, 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981).