UNITED STATES of America, Plaintiff,

v.

Alan THOMSON, Defendant.

Crim. No. 89–21A.

United States District Court,
W.D. New York.

Oct. 24, 1990.

Dennis C. Vacco, U.S. Atty., W.D.N.Y., Russell P. Buscaglia, Asst. U.S. Atty., Buffalo, N.Y., for U.S.

Morton Stavis, New York City, for defendant.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

Defendant, Alan Thomson, is charged by indictment with directing a structured banking transaction in violation of 31 U.S.C. §§ 5322(a), 5324(3), and 18 U.S.C. § 2. During pretrial discovery, the defendant and the Court were notified by the government that it had in its possession certain records and summaries of conversations involving the defendant that were obtained through electronic surveillance conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA"). The defendant has moved for disclosure of the FISA material under sections 106(f) and 106(g) of the FISA, 50 U.S.C. §§ 1806(f)–(g), and Fed.R.Crim.P. 16.

The government has asserted, by affidavit, that none of the FISA material at issue contains either relevant or exculpatory information or material regarding the offense charged by the indictment. Further, the government asserts that it does not intend to use, in this case, any information obtained or derived from any electronic surveillance conducted pursuant to FISA.

Nevertheless, the defendant asserts that he is entitled to disclosure of the FISA material. His argument is based on three grounds. First, the defendant argues that disclosure of the FISA material, or an adversary hearing, is necessary under section 106(f) of FISA, 50 U.S.C. § 1806(f), in order for the Court to make an accurate determination of the legality of the electronic surveillance at issue. Second, the defendant argues that because the government failed to carry out the minimization procedures required by FISA, the surveillance at issue was unlawful, thus entitling him to disclosure of the FISA material under section 106(g) of FISA, 50 U.S.C. § 1806(g). Finally, the defendant argues that he is entitled to disclosure of the FISA material under section 106(g) of FISA, 50 U.S.C. § 1806(g), as a matter of due process.

The Court has considered legal briefs submitted by the parties, and has heard oral argument from the parties on whether the electronic surveillance material at issue should be disclosed. In addition, the Court reviewed *ex parte, in camera,* a sealed Exhibit submitted by the Attorney General, pursuant to section 106(f) of the FISA, 50 U.S.C. § 1806(f), that included the classified sealed affidavits of Russell P. Buscaglia, Assistant United States Attorney, and W. Douglas Gow, Assistant Director of Intelligence Division, Federal Bureau of Investigation. The Court also received and considered an affidavit of the Honorable Dick Thornburg, the Attorney General of the United States. After reviewing all the information and material submitted by the parties, the Court denies defendant's motion for disclosure of the FISA surveillance material for the reasons stated herein.

### FISA

The surveillance at issue was conducted pursuant to FISA, which was enacted into law on October 25, 1978. Pub.L. 95–511, 92 Stat. 1783 (1978). FISA establishes procedures under which the Attorney General can obtain a judicial order authorizing electronic surveillance in the United States to acquire information for foreign intelligence purposes. S.Rep. No. 95–604, 95th Cong., 2d Sess., pt. 1 at 4–5, 1978 U.S.Code Cong. & Admin.News at 3904, 3906. It also created a United States Foreign Intelligence Surveillance Court ("USFISC"), on which seven United States District Court Judges, selected by the Chief Justice of the United States, sit. 50 U.S.C. § 1803(a).

To obtain a surveillance order, a federal officer, having first obtained approval from the Attorney General, must submit an application to one of the USFISC Judges. 50 U.S.C. § 1804(a). The application must detail the identity of the target; the information relied on by the government to demonstrate that the target is a "foreign power" or an "agent of a foreign power"; evidence that the place where the surveillance will occur is being used, or is about to be used by the foreign power or its agent; the type of surveillance to be used; the minimization procedures to be employed; and certification that the information sought is "foreign intelligence information". *See* 50 U.S.C. § 1804(a)(1)–(11).

Before issuing the order, the USFISC Judge must make specific findings, including that:

> there is probable cause to believe that (A) the target of the electronic surveillance is a foreign power or an agent of a foreign power: *Provided*, that no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States....

50 U.S.C. § 1805(a)(3)(A). An order is usually valid for 90 days with certain limited exceptions. *See, e.g.*, 50 U.S.C. §§ 1802(a), 1805(e).

Under FISA, information acquired from a FISA surveillance concerning any "United States person" may be used and disclosed without the consent of the "United States person" only in accordance with the minimization procedures noted above. No information acquired from a FISA electronic surveillance may be disclosed or used except for lawful purposes. 50 U.S.C. § 1806(a).

Should FISA surveillance produce any information that would be relevant in a criminal proceeding, section 106 of FISA, 50 U.S.C. § 1806, establishes procedures for the use or disclosure of that information. More specifically, when a criminal defendant moves for disclosure of FISA surveillance material, sections 106(f) and 106(g) of FISA, 50 U.S.C. §§ 1806(f)–(g), prescribe the procedures to be followed by the Court in determining whether or not to order disclosure.

Under FISA, when a criminal defendant who is the target of an electronic surveillance, or whose communications or activities were subject to electronic surveillance, moves for disclosure of the FISA material, and the Attorney General opposes the motion by filing an affidavit indicating that disclosure or an adversary hearing would harm the national security, the Court must conduct an *ex parte, in camera* review of the application, order, and such other material relating to the surveillance as may be necessary to determine whether the surveillance was lawfully authorized and conducted. 50 U.S.C. § 1806(f). The Court *may* order disclosure of the material if such disclosure is necessary to make an accurate determination of the legality of the surveillance. 50 U.S.C. § 1806(f) (emphasis added).

If the Court determines that the surveillance was unlawfully authorized or conducted, it *must* order disclosure of the FISA material. 50 U.S.C. § 1806(g) (emphasis added). In *United States v. Belfield*, 692 F.2d 141 (D.C.Cir.1982), the court stated that: "[e]ven when the government has purported not to be offering any evidence obtained or derived from the electronic surveillance, a criminal defendant may claim that he has been the victim of an illegal surveillance and seek discovery of the [FISA surveillance material] to ensure that no fruits thereof are being used against him." *Id.* at 146. If, on the other hand, the Court determines that the surveillance was lawfully authorized and conducted, it must deny the defendant's motion for disclosure "except to the extent that due process requires discovery or disclosure." 50 U.S.C. § 1806(g); *see United States v. Spanjol*, 720 F.Supp. 55 (E.D.Pa. 1989).

Thus, the Court can grant a motion for disclosure of FISA surveillance material in only three instances: (1) if disclosure is necessary for the Court to make an accurate determination of the legality of the surveillance; (2) if the surveillance was un-

lawfully authorized or conducted; or (3) if due process requires disclosure. 50 U.S.C. §§ 1806(f)–(g).

## FINDINGS OF FACT

Having read and analyzed the parties' briefs, heard oral argument, and reviewed *ex parte, in camera* certain relevant material, the Court hereby makes the following findings of fact:

1. As part of the government's response to defendant's motion for disclosure of the FISA electronic surveillance material, the Attorney General of the United States filed an Affidavit and Claim of Privilege pursuant to 50 U.S.C. § 1806(f). In this affidavit, the Attorney General asserts that it would harm the national security of the United States to disclose or have an adversary hearing with respect to the documents of the USFISC that are contained in the sealed Exhibit submitted to the Court, and to disclose any additional information relating to the electronic surveillance at issue.

2. The sealed Exhibit submitted by the Attorney General and other material before the Court demonstrate that the government, in conducting the electronic surveillance, was engaged in collection of foreign intelligence. Complete copies of the government's applications for all such surveillance and the USFISC orders were included in the Attorney General's sealed Exhibit.

3. The government attorney has stated in an affidavit that he has not made, nor will he make, any direct, indirect or derivative use of the surveillance material at issue in this case.

4. The government has conducted a review of the logs and reports of the electronic surveillance at issue in this case. The sealed Exhibit contained an affidavit of the Assistant Director, Intelligence Division of the FBI, and an affidavit of an Assistant United States Attorney who conducted the review. In these affidavits, the affiants described the documents examined and the Assistant United States Attorney stated that the reviewed material did not contain any exculpatory or relevant information.

5. The Court reviewed and examined *ex parte, in camera* all material relating to the electronic surveillance at issue, and finds that none of the material contains any exculpatory or relevant information. In reviewing the contents of the material the Court finds that the documents contain sufficient information and detail to enable the Court to determine the subject matter of those conversations involving the defendant. Since the material identifies the targets of the electronic surveillance at issue, the Court further finds that all such material is covered by the Attorney General's assertion of privilege and need not be disclosed to the defendant or his counsel.

6. FISA requires this Court to review the government's applications and the USFISC orders authorizing the surveillance to determine whether the surveillance was lawfully authorized and conducted. 50 U.S.C. § 1806(f). Accordingly, the Court has reviewed the relevant material in the sealed Exhibit and finds that the applications for electronic surveillance set forth all the information that the FISA requires. *See* 50 U.S.C. § 1804. The Court also finds that the USFISC orders contained all the findings required by FISA. *See* 50 U.S.C. § 1805. Specifically, the Court finds that the President has authorized the Attorney General to approve applications for electronic surveillance, 50 U.S.C. § 1805(a)(1); the instant applications were made by federal officers and approved by the Attorney General, 50 U.S.C. § 1805(a)(2); there was probable cause to believe that the targets of the surveillance fell within the definition of a "foreign power" or "agent of a foreign power" as set forth in 50 U.S.C. § 1801(a) and (b); the facilities against which the electronic surveillance was directed were being used by a foreign power or agent of a foreign power, 50 U.S.C. § 1805(a)(3); the minimization procedures included with the government's application and ordered by the USFISC meet the requirements of section 101(h) of FISA, 50 U.S.C. § 1805(a)(4); and the application which has been filed contains all statements and certifications required by section 104 of FISA, 50 U.S.C.

§ 1804. The Court also finds that the orders issued by the USFISC fully satisfied the requirements of section 105(b) of FISA, 50 U.S.C. § 1805(b).

## NECESSITY OF DISCLOSURE OR AN ADVERSARY HEARING TO DETERMINE THE LEGALITY OF THE SURVEILLANCE

■ Defendant argues that disclosure of the material relating to the surveillance or an adversary hearing may be necessary in order for the Court to accurately determine the legality of the electronic surveillance at issue. 50 U.S.C. § 1806(f). The determination of the necessity of such a disclosure or adversary hearing, however, is left to the discretion of the Court. 50 U.S.C. § 1806(f); *see Belfield*, 692 F.2d at 147.

No court that has been required to determine the legality of a FISA surveillance has found disclosure or an adversary hearing necessary. *See, e.g., United States v. Sarkissian*, 841 F.2d 959 (9th Cir.1988); *United States v. Ott*, 827 F.2d 473 (9th Cir.1987); *United States v. Duggan*, 743 F.2d 59 (2d Cir.1984); *Belfield*, 692 F.2d at 141; *United States v. Falvey*, 540 F.Supp. 1306 (E.D.N.Y.1982). As the court in *Belfield* explained:

> Disclosure and an adversary hearing are the exception, occurring *only* when necessary. [Emphasis in original.] The legislative history explains that such disclosure is "necessary" only where the court's initial review of the application, order, and fruits of the surveillance indicates that the question of legality may be complicated by factors such as "indications of possible misrepresentation of fact, vague identifications of the persons to be surveilled, or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order." [Quoting S.Rep. No. 95-701, 95th Cong., 2d Sess. at 64 (1978), U.S.

Code Cong. & Admin.News 1978, 3973, 4033]

> An examination of the *in camera* Exhibit in this case demonstrates that no such factors are present here. The target of the surveillance is clearly identified; the foreign policy purpose patently evident; the facts justifying the surveillance are well within the bounds set by the minimization procedures. It is readily apparent that all the statutory requirements have been met. Furthermore, the harm to U.S. security interests which would stem from disclosure of the Exhibit is equally evident.

> The determination of legality in this case is not complex ... Indeed, the surveillance is so clearly supported by the documents in the Exhibit that it would have been an abuse of discretion for the district court to order disclosure.

*Belfield*, 692 F.2d at 147.

After reviewing both the sealed Exhibit *ex parte, in camera* and the material provided by the parties, the Court finds that the issues in this case are not so complex that the participation of the defendant is required to accurately determine the legality of the surveillance at issue. Thus, disclosure of the FISA material at issue is not warranted under section 106(f) of FISA, 50 U.S.C. § 1806(f).

## THE MINIMIZATION ISSUE

■ Defendant also argues that disclosure of the FISA material is required under § 106(g) of FISA, 50 U.S.C. § 1806(g), because the surveillance at issue was unlawfully authorized and conducted. He asserts that the surveillance was unlawful because the government failed to carry out the minimization procedures required by FISA.[1] The defendant's basis for his minimization argument is that, in sum, the government could not have obtained information from such a surveillance which would have met the statutory definition of foreign intelligence information, and thus

---

**1.** The defendant also argued in his memorandum that the surveillance was unlawful because the government lacked probable cause to target the defendant for electronic surveillance under

FISA. At oral argument, the defendant waived this argument after being assured by the government that the defendant was not the target of the electronic surveillance at issue.

the acquisition and retention by the government of any information concerning the defendant would not comply with FISA minimization procedures. After review of all materials and exhibits submitted by the parties, the Court finds that the government fully complied with all FISA minimization requirements.

"Minimization procedures" with respect to a FISA electronic surveillance are defined, in pertinent part, as:

[S]pecific procedures, which shall be adopted by the Attorney General, that are reasonably designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information.

50 U.S.C. § 1801(h). In every application for a USFISC order authorizing electronic surveillance pursuant to FISA, the government must propose such minimization procedures. The proposed minimization procedures are adopted by the USFISC in its order authorizing the electronic surveillance, provided that the USFISC finds that they meet the definition of minimization procedures set forth in section 101(h) of FISA, 50 U.S.C. § 1801(h). 50 U.S.C. § 1805.

The FISA minimization procedures were enacted "generally to parallel the minimization provision in existing [electronic surveillance] law." S.Rep. No. 95–701, 95th Cong.2d Sess. at 39, 1978 U.S.Code Cong. & Admin.News at 4008. In so doing, Congress recognized that:

As the courts have noted in construing [existing electronic surveillance law] "it is ... obvious that no electronic surveillance can be so conducted that innocent conversations can be totally eliminated." *United States v. Bynum,* 485 F.2d 490, 500 (2d Cir.1973), *cert. denied,* 423 U.S. 1005 [952, 96 S.Ct. 357, 46 L.Ed.2d 277] (1975). In assessing the minimization effort, the court's role is to determine whether "on the whole, the agents have shown a high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion." *United States v. Tortorello,* 480 F.2d 764 (2d Cir.), *cert. denied,* 414 U.S. 886 [866, 94 S.Ct. 63, 38 L.Ed.2d 86] (1973). Absent a charge that the minimization procedures have been disregarded completely, the test of compliance is "whether a good faith effort to minimize was attempted." *United States v. Armocida,* 515 F.2d 29, 44 (3d Cir.1975). S.Rep. No. 95–701, 95th Cong.2d Sess. at 39–40, 1978 U.S.Code Cong. & Admin.News at 4008–09.

In *Scott v. United States,* 436 U.S. 128, 135–39, 98 S.Ct. 1717, 1722–24, 56 L.Ed.2d 168 (1978), the Supreme Court held that this "good faith" standard meets the reasonableness requirements of the Fourth Amendment as applied to electronic surveillance conducted pursuant to Title III, and that the proper approach for evaluating compliance with the minimization requirements is to objectively assess the monitoring agent's actions in light of the circumstances at the time, without regard to their underlying motive or intent. The legislative history makes it clear that this standard of reasonableness should apply with equal force to FISA electronic surveillance. Thus, the government must make a good faith effort to minimize the acquisition, retention, and dissemination of information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence. 50 U.S.C. § 1801(h)(1).

Every FISA electronic surveillance must have as its purpose the obtaining of foreign intelligence information. 50 U.S.C. § 1802(b) *et al.* This purpose must be personally certified to by one of certain specified high-level executive branch officials cognizant of national security or defense matters who are designated by the President, as set forth in Executive Order 12139, 3 C.F.R. 397 (1980). 50 U.S.C. §§ 1804(a)(7), 1805(a).

Defendant suggests that none of his communications could possibly be related to foreign intelligence purposes, and thus they should not have been retained by the government. He bases his argument on his interpretation of the definition of foreign intelligence information in FISA. Defendant appears to imply in his memorandum that only information necessary for the United States to defend against an imminent actual attack, terrorism, sabotage, or other immediate threat can be retained. *See* Defendant's Memorandum at 19. However, this narrow interpretation of the definition of foreign intelligence information under FISA is incorrect.

FISA defines foreign intelligence information as:

(1) information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against (A) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power; (B) sabotage or international terrorism by a foreign power or an agent of a foreign power; or (C) clandestine intelligence activities by an intelligence service or network or a foreign power or by an agent of a foreign power; or

(2) information with respect to a foreign power or foreign territory that relates to, and if concerning a United States person is necessary to—(A) the national defense or the security of the United States; or (B) the conduct of the foreign affairs of the United States.

50 U.S.C. § 1801(e).

Defendant narrowly focuses only on the types of information set forth in § 1801(e)(1), and disregards the equally applicable provisions of § 1801(e)(2). However, in cases where electronic surveillance acquires information with respect to a foreign power which concerns a United States person, that information may satisfy the statutory requirement of foreign intelligence information if it relates to actual attack or if it encompasses information which "is necessary to (A) the national defense or the security of the United States, or (B) the conduct of the foreign affairs of the United States." 50 U.S.C. § 1801(e)(2).

For example, electronic surveillance of the communications of a foreign power which acquired information about military, political, diplomatic or intelligence matters would clearly be necessary to the national defense, security, or foreign affairs of the United States, even where such information also concerned a United States person. Such information would thus fall within the scope of § 1801(e)(2), and the government could lawfully acquire and retain it.

Furthermore, the government is not required to make an instantaneous identification of information acquired through a FISA authorized surveillance as unequivocally being foreign intelligence or else discarding it. The legislative history of FISA is clear on this point.

[T]he definition of "minimization procedures" does not state that only "foreign intelligence information" can be acquired, retained, or disseminated. The committee recognizes full well that bits and pieces of information, which taken separately could not possibly be considered "necessary", may together or over time take on significance and become "necessary." Nothing in this definition is intended to forbid the retention or even limited dissemination of such bits and pieces before their full significance becomes apparent.

H.R.Rep. No. 95–1283, 95th Cong., 2d Sess., pt. I at 58 (1978).

[I]n intelligence as in law enforcement, leads must be followed. Especially in counterintelligence cases where often trained professional foreign intelligence personnel are involved, a lead which initially ends in a "dry hole" can hardly be considered a dead issue, although it may be temporarily shelved to divert limited resources to other leads. Therefore, this committee intends that a significant degree of latitude be given in counterintelligence and counterterrorism cases with respect to the retention of information and the dissemination of information between and among counterintelligence components of the Government.

H.R.Rep. No. 95–1283, 95th Cong., 2d Sess., pt. I at 59 (1978).

When a United States person communicates with a foreign power or agent of a foreign power, the government would be remiss in meeting its foreign counterintelligence responsibilities if it did not investigate such contacts and gather information to determine the nature of those activities. To suggest otherwise ignores the purpose of FISA which is to provide a procedure for the government to obtain authorization to conduct electronic surveillance in the United States for foreign intelligence purposes. S.Rep. No. 95–604, 95th Cong.2d Sess., pt. I, at 4–5, 1978 U.S.Code Cong. & Admin. News at 3906.

Thus, the Court finds upon its review *ex parte, in camera* of the sealed Exhibit that all of the FISA authorized electronic surveillance on which the defendant was overheard meets the standards of foreign intelligence set forth in the statute, and that the government made a "good faith" effort in minimizing information concerning United States persons which may have been acquired through such electronic surveillance. Consequently, the FISA electronic surveillance at issue was lawfully authorized and conducted.

## DUE PROCESS ISSUES

■ The defendant further argues that, even if the FISA electronic surveillance at issue was lawfully authorized and conducted, he is entitled to disclosure as a matter of due process. 50 U.S.C. § 1806(g). This argument is two fold. First, defendant claims that if any of the information contained in the FISA material is relevant to this case, he is entitled to disclosure as a matter of law. Second, the defendant claims that he is entitled to disclosure because the government's conduct in this case was so outrageous that it violated his right to due process.

The defendant argues that he is entitled, under Fed.R.Crim.P. 16, to any relevant information contained in the FISA material. As stated in the findings of fact, however, the Court has reviewed the FISA electronic surveillance material at issue and finds that none of the material contains any information that is either relevant or exculpatory. Furthermore, the government has stated by affidavit that it has not made, nor does it plan to make, any use of the FISA material in the instant case.

■ Even assuming, however, that the FISA material at issue is in some way relevant to this case, the defendant is still not entitled to disclosure of the material under Fed.R.Crim.P. 16. *Spanjol,* 720 F.Supp. at 59. The legislative history of the Act states plainly that Congress intended to restrict discovery as much as constitutionally possible in cases involving FISA. FISA rendered Rule 16 and other existing laws inapplicable to discovery of FISA surveillance information with respect to Section 106(g) of FISA, 50 U.S.C. § 1806(g), which mandates denial of discovery of material relating to lawfully authorized foreign surveillance "except to the extent that due process requires." The legislative history states:

The Committee recognizes that this provision alters existing law and is a limitation on existing discovery practice. It is felt that where the ... court has determined that the surveillance is lawful, security considerations should preclude any disclosure unless due process requires disclosure.

H.R.Rep. No. 95–1283, 95 Cong., 2d Sess., Pt. I at 94 n. 50 (1978). In *United States v. Spanjol,* 720 F.Supp. 55 (E.D.Pa.1989), the court held that defendants were not entitled to discovery of conversations intercepted on FISA surveillance, even though some of the conversations were determined to be "minimally relevant" to the case. In its decision, the court noted that:

In enacting FISA Congress intended to restrict, as much as constitutionally possible, discovery of FISA material. (citation omitted) To achieve this end, Congress enacted Section 106(g) of FISA, 50 U.S.C. § 1806(g), which mandates denial of discovery of material relating to lawfully authorized foreign surveillance "except to the extent that due process requires." Thus, to the extent that Fed.R. Crim.P. 16 allows discovery of the prior

relevant statements of the defendants beyond exculpatory information constitutionally mandated by *Brady v. Maryland,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), and its progeny, it is inapplicable to discovery of intelligence information collected under the Act.

*Id.* at 59. Thus, to the extent that Rule 16 allows discovery beyond that constitutionally mandated by *Brady,* it is inapplicable to discovery of intelligence information collected under FISA.

 Finally, defendant raises the potential defenses of entrapment and government misconduct, and argues that his due process rights were violated by outrageous government misconduct in that "the FBI's intrusive surveillance of defendant over a period of many years was totally without legal justification and violated his constitutional rights." Defendant's Memorandum at 24.

In addressing a similar situation in *United States v. Duggan,* 743 F.2d 59, 84 (2d Cir.1984), the Second Circuit stated that:

> The Supreme Court has noted the possibility that a due process violation grounded in outrageous government conduct might be available even if the defendant, because of his predisposition, could not establish an entrapment defense. *See, United States v. Russell,* 411 U.S. 423, 431–432 [93 S.Ct. 1637, 1642–1643, 36 L.Ed.2d 366] (1973). As Justice Powell commented, however, "[p]olice overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction." *Hampton v. United States,* 425 U.S. 484, 495 n. 7 [96 S.Ct. 1646, 1653 n. 7, 48 L.Ed.2d 113] (1976).

> We have rarely sustained due process claims concerning government investigative conduct, stressing that the conduct involved must be "most egregious," *United States v. Alexandro,* 675 F.2d 34, 40 (2d Cir.), *cert. denied,* 459 U.S. 835 [103 S.Ct. 78, 74 L.Ed.2d 75] (1982) and " 'so repugnant and excessive' as to shock the conscience," *United States v. Romano,* 706 F.2d 370, 382 (2d Cir.1983)

(quoting *United States v. Alexandro, supra,* 675 F.2d at 39).

As stated earlier, after review of the FISA material contained in the sealed Exhibit and the submissions of the parties, this Court finds that the surveillance at issue was lawfully authorized and conducted. There is no evidence of any government misconduct with regard to any FISA authorized electronic surveillance, much less conduct which would be "most egregious". Thus, defendant's claims of "outrageous government conduct" are entirely unfounded.

### CONCLUSION

For the reasons set forth above, the defendant's motion for disclosure of the FISA material is denied. The parties are directed to meet with the Court on October 31, 1990 at 2:00 p.m. for a status conference.

SO ORDERED.