**GLOBAL RELIEF FOUNDATION, INC., Plaintiff.**

v.

**Paul H. O'NEILL, Colin L. Powell, John Ashcroft, R. Richard Newcomb, and Robert S. Mueller, III, Defendants.**

No. 02 C 674.

United States District Court,
N.D. Illinois,
Eastern Division.

April 5, 2002.

Thomas Anthony Durkin, Durkin & Roberts, Chicago, IL, Roger C. Simons, Victor E. Cretella, III, Matthew H. Simmons, Shawn P. Cavenee, Gordon & Simmons, Frederick, MD, for Plaintiff.

Thomas P. Walsh, United States Attorney's Office, Chicago, IL, John E. Smith, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

This case is before the Court on the emergency motion of the plaintiff, Global Relief Foundation, Inc., to preclude *ex parte, in camera* proceedings before this Court. For the following reasons, the plaintiff's motion is denied.

## BACKGROUND

In response to the attacks on September 11, 2001, President George W. Bush declared a national emergency on September 24, 2001 with respect to the "grave acts of terrorism and threats of terrorism committed by foreign terrorists ... and the immediate threat of further attacks on United States nationals or the United States." Exec. Order No. 13224, 66 Fed.Reg. 49074 (Sep. 24, 2001). Due to the "pervasiveness and expansiveness of the financial founda-

tion of foreign terrorists," the Executive Order instructed the executive agencies of the United States to utilize all legal means to stem the flow of money supporting terrorist organizations throughout the world.

Global Relief Foundation, Inc. ("Global Relief") is a domestic, non-profit corporation chartered and headquartered in Illinois. On December 14, 2001, the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, and the President's Executive Order, issued a "Blocking Notice and Requirement to Furnish Information." The notice blocked the funds, accounts and business records in which Global Relief had an interest, pending further investigation.

According to the defendants, on December 14, 2001, agents from the Federal Bureau of Investigation ("FBI") conducted a search of the offices of Global Relief and a search of the home of its executive director, Mohammed Chehade, pursuant to the terms of the Foreign Intelligence Surveillance Act, 50 U.S.C. §§ 1821—1829. During these searches, the FBI collected records, video equipment, financial literature, promotional books, tapes, e-mail, and computers.

On January 28, 2002, Global Relief filed its Petition for Declaratory and Injunctive Relief and for a Writ of Mandamus. In that petition, Global Relief seeks a judgment which would "unfreeze" money blocked by the defendants as well as order the defendants to return documents and other materials recovered during the search of Global Relief's offices. On February 12, 2002, Global Relief filed its Motion for Preliminary Injunction arguing that the block of its assets and records was illegal and unconstitutional.

On March 8, 2002, in preparation for the filing of a response to the Global Relief's motion for a preliminary injunction, counsel for the defendants sent a letter to the Court. In that letter, defendants requested permission to suggest to the Court, *in camera* and *ex parte* (in the judge's chambers with only one party present), the procedures under which the Court should consider the proposed *in camera* submission supporting the defendants' opposition to the Global Relief's motion. Global Relief objected to this meeting, which took place on March 14, 2002. Global Relief then filed the motion before the Court today.

In its motion, Global Relief maintains that the letter, the meeting that ensued, and the forthcoming court review of *in camera* submissions violate this Court's normal procedures, and, more importantly, that an *ex parte, in camera* consideration of the defendants' submissions is illegal and unconstitutional. Indeed, Global Relief characterized the proposed review as "Orwellian" and argues that it violates at least ten constitutional principles. Global Relief asserts that this Court should neither review nor consider any of the proposed *in camera* submissions until it has first decided the validity of Global Relief's legal challenges to the actions of the defendants. Due, however, to the extraordinary circumstances alleged by the defendants, this Court, for the reasons stated below, respectfully declines to grant the motion of Global Relief.

## DISCUSSION

The defendants rely upon the IEEPA as the statutory basis for their decision to block the financial assets of Global Relief. The IEEPA allows the President of the United States to "block during the pendency of an investigation ... any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50

U.S.C. § 1702(a)(1)(B). Any judicial review of the defendants' decision to block Global Relief's property under this statute is necessarily fact intensive. For example, this Court may not be able to determine whether any "foreign country or national thereof" had an "interest" in Global Relief without first reviewing the proposed *in camera* submission.

Accordingly, a proper evaluation of Global Relief's challenges to the defendants' actions in this case requires a review of *all* the available submissions, whether publicly disseminated or *in camera* and *ex parte*. Our review of the proposed *in camera* submission does not presuppose that the Court will rely on that submission when ultimately ruling on Global Relief's motion for a preliminary injunction. A court cannot determine if proposed evidence is admissible and probative without first examining it.

Our conclusion with respect to the review of the proposed *in camera* submissions is supported by *Abourezk v. Reagan*, 785 F.2d 1043 (D.C.Cir.1986), *aff'd*, 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987). *See also Patterson v. Federal Bureau of Investigation*, 893 F.2d 595, 599–600 (3d Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *United States v. Ott*, 827 F.2d 473, 475 (9th Cir.1987); *United States v. Belfield*, 692 F.2d 141, 147 (D.C.Cir.1982); and *United States v. Nicholson*, 955 F.Supp. 588, 592 (E.D.Va. 1997). In *Abourezk*, suits challenged the refusal of the Secretary of State to issue visas to aliens whom the plaintiffs had invited to come to the United States to speak on issues of public concern. The court addressed the proper standards that should apply when a court is asked to review *in camera* and *ex parte* submissions. While noting that, as a general rule, "a court may not dispose of the merits of a case on the basis of *ex parte, in camera* submissions," the court recognized

that, in "extraordinary circumstances," it may be necessary for a district court to review and rely on certain evidence *in camera* and *ex parte*. *Id.* at 1061. One such circumstance recognized by the court is the assertion of the "state secrets privilege" by the government when "acute national security concerns" are involved. *Id.* In that situation, the court held that review of *in camera* and *ex parte* submissions was only appropriate when: a) the government demonstrated "compelling national security concerns;" and b) the government publicly disclosed, prior to any *in camera* inspection, as much of the material as it could divulge without compromising the privilege. *Id.* (citing *Molerio v. Federal Bureau of Investigation*, 749 F.2d 815 (D.C.Cir.1984)).

In this case, the defendants have acted in accordance with the rationale espoused in *Abourezk*. On March 27, 2002, the Attorney General of the United States filed a declaration in which he stated that "it would harm the national security of the United States to disclose or have an adversary hearing with respect to materials submitted to the [United States Foreign Intelligence Surveillance Court] in connection with this matter." (Ashcroft Declaration at ¶ 3.) The defendants claim to have satisfied the second prong of the *Abourezk* rationale by publicly filing on March 27, 2002 four binders of exhibits to support their arguments in opposition to the motion for a preliminary injunction. Therefore, in light of the standards enunciated in *Abourezk*, it is appropriate for the Court in this case to review and examine the proposed *in camera* submission of the defendants when deciding Global Relief's motion for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the plaintiff's emergency motion to preclude *ex parte, in*

*camera* proceedings is denied. Accordingly, this Court will begin its review of the proposed *in camera* submissions to facilitate its consideration of Global Relief's motion for a preliminary injunction.